**William F. LANNING, Petitioner,**

v.

**Honorable Ray MARSHALL, Secretary of Labor, Respondent.**

No. 80–7020.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1981.

Decided July 13, 1981.

William F. Ferroggiaro, Jr., Eureka, Cal., for petitioner.

Beate Bloch, Washington, D.C., for respondent.

Before TANG and POOLE, Circuit Judges, and LUCAS,* District Judge.

POOLE, Circuit Judge:

William F. Lanning appeals a determination by the Secretary of Labor denying weekly layoff benefits available to displaced forest industry workers under the Redwood National Park Expansion Act of 1978 (Redwood Act) 16 U.S.C. § 79b.[1] The decision followed a hearing before an Administrative Law Judge of the California Unemployment Insurance Board. The Secretary of Labor ruled that at the time appellant was rendered an "affected employee" by partial layoff as he had less than the five years of creditable service required to be eligible for full benefits under the Act. We affirm.

---

* The Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

I

Because this is the first case in which we are required to interpret the Redwood Act, some statutory background is in order. The Redwood Act was enacted to increase the acreage of Redwood National Park and to provide economic assistance in the form of weekly layoff benefits, severance payments and relocation allowances to employees affected by the expansion. To insure that employees of the forest products industry would not be forced to suffer personal hardship as a result of the park expansion, the Act contains provisions to maintain the income and benefits of affected employees and includes economic programs such as preferential hiring consideration and retraining to stimulate employment opportunities. *See generally* H.R.Rep.No.95–581, 95th Cong., 1st Sess. 28, U.S.Code Cong. & Admin.News 1978, 463 (1977).

Title II of the Act delineates the procedures, administrative provisions, eligibility requirements and benefits of the Redwood Employee Protection Program. Basically, the Act requires that an employee work for a business entity which is engaged in the harvest of timber, or in related sawmill, plywood and other wood processing operations in the area. §§ 201(6), 201(7), 201(8). The Secretary of Labor has designated those business entities which are "affected employers."

The employees of affected employers are eligible to apply to the California Employment Development Department for benefits. A determination is then made as to whether the applicant is both a "covered" and an "affected" employee, pursuant to §§ 201(10) and 201(11), respectively. An employee is considered "affected" if he was totally or partially laid off by an affected employer between May 31, 1977 and September 30, 1980. An employee is "deemed adversely affected as of the date of the employee's layoff, downgrading, or termination." § 201(11).

---

1. Portions of the Act which have not been codified appear at 92 Stat. 163, *et seq.* Section references are to the Act unless otherwise indicated.

An applicant who has completed at least five years of creditable service[2] on the date of becoming an affected employee, is considered long-service. Long-service employees are entitled to weekly layoff and vacation replacement benefits when they are partially or totally laid off. § 205(b). They may also qualify for severance payments if they are totally laid off. § 208(a). If the applicant has completed less than five years of creditable service as of the date of becoming affected, he is considered a short-service employee and subject to the provisions of § 209.[3] Short-service employees are ineligible for weekly layoff and vacation replacement benefits. However, they are eligible for retraining and, if totally laid off, are entitled to severance payments. §§ 208(a), 209(b).

Appeal lies from the Employment Development Department to the California Unemployment Insurance Appeals Board and to the Secretary of Labor. Where two or more statutory interpretations would be reasonable, the Secretary "... shall adopt and apply that construction which is most favorable to employees." § 213(f). The decision of the Secretary is reviewable in this Court under the terms of 19 U.S.C. § 2322, *repealed* Nov. 1, 1980.

## II

On February 6, 1973, Lanning was hired by the Louisiana-Pacific Corporation, an "affected employer" within the meaning of the Act. On June 2, 1977, he was informed that his position as a log scaler would no longer exist and he sought another position with the same company and was hired as an engineering assistant. The rate of pay for an engineering assistant was approximately $1.69 an hour less than that for a log scaler. Lanning has worked primarily in the engineering department since that time and on February 6, 1978, had completed five years of service with the company. On April 13, 1978, Lanning applied for benefits under the Redwood Act because he had been downgraded and thereby partially laid off in 1977. However, since he had completed five years of creditable service by the time of his application he claimed to be a "long-service employee" and requested full, long-service benefits. The Employment Development Department issued a Notice of Determination denying weekly layoff benefits on the ground that Lanning was a short-service employee at the time he became affected. The decision was upheld both by an Administrative Law Judge of the Unemployment Insurance Appeals Board and the Secretary of Labor. On this appeal Lanning challenges the Secretary's application of the statute to him.

Appellant contends that when on February 6, 1978 he completed five years of creditable service, he became entitled to long-service benefits based on his partial layoff of June 2, 1977. This partial layoff, he asserts, is continuous in nature and its economic loss should be measured as of April 3, 1978, the date he initially applied for Redwood benefits. We decline to adopt appellant's version of the statute and affirm the Secretary's construction. The statute's language is incapable of a construction supporting appellant's interpretation.[4]

2. An employee's "creditable service" is a period equal to the length of seniority accumulated with his last affected employer as of the date he becomes affected plus all prior periods during which he had seniority with the same employer and with other industry employers. § 206(b).

3. Section 209, in pertinent part, provides:
"(a) Notwithstanding any other provision of this Act, an affected employee ... shall be ineligible for any benefits under this title except as provided in this section if:
    \*     \*     \*     \*     \*     \*
   (2) said employee as of the date of becoming an affected employee, does not have service

credit for pension purposes of at least five years under a pension plan contributed to by industry employers."

4. When faced with a problem of statutory construction, this court normally shows great deference to the statutory interpretation offered by the agency charged with its administration. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Consequently, we will sustain an agency's interpretation of a statute if it is reasonable, even when another interpretation appears equally plausible. *Id.* Here, however, section 213(f) of the Act instructs that "(i)n all cases where two or more constructions of the language of the title would be

Section 201(11) of the Act expressly provides that "an employee shall be deemed adversely affected *as of* the date of [his] layoff, downgrading or termination." Under Section 209(a)(2) an employee's status as short or long-service is determined *"as of the date of becoming an affected employee."* (Emphasis supplied for both quotes.) On June 2, 1977, when he first became partially laid off or downgraded, appellant had not completed the required five years of creditable service and thus was a short-service employee. Although he remained in that downgraded position and therefore partially laid off to and including completion of his five years on February 6, 1978, that date cannot reasonably be considered the time referred to by the statute as the date on which he became "adversely affected." The event had occurred earlier and the mere passage of time is simply not the adverse affect meant by the Act. The adverse affect took place on June 2, 1977, the date he was downgraded, not on February 6, 1978, when he completed five years of creditable service.

Congress did not intend to compensate every economic loss associated with expansion of the Redwood National Park. *See, e. g.,* § 201(11) (limiting time period during which adverse affect would be calculated). It is clear that what compensation Congress provided was to be triggered at the point park expansion adversely affected a particular forest industry employee. *See* § 209. Those with less than five years of service in the forest industry were not to be entitled to the same benefits as those with longer service periods. *Id.* We would do a disservice to the limited compensatory intent of Congress were we to order payment of long-service benefits to one who was not a long-service employee at the point Redwood Park expansion adversely affected his employment.

In sum, neither the legislative history nor the express terms of the statute support appellant's contention that he is entitled to long-service benefits for an adverse affect which occurred when he was a short-service employee. Accordingly, the decision is affirmed.

*AFFIRMED.*

---

reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees." Appellant urges that this section modifies our normal standard of review and requires us to reject the Secretary's interpretation if an alternative construction is reasonable and would be more favorable to employees. We believe appellant's position has merit, at least when the alternative construction is beneficial to employees as a class and not just to individual claimants. Even under this standard of review, however, appellant would not prevail. Whatever the effect of section 213(f), its application is preconditioned on the existence of an alternative construction that is "reasonable." The statutory language at issue here is semantically incapable of being construed in a manner favorable to appellant's interpretation, and thus fails to qualify as a "reasonable" alternative to the Secretary's interpretation.