**TOTEM OCEAN TRAILER EXPRESS, INC., Petitioner,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents.**

No. 80–7721.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 19, 1981.

Decided Nov. 23, 1981.

Jacob P. Billig, Billig, Sher & Jones, Washington, D.C., for petitioner.

Gordon M. Shaw, Washington, D.C. (argued), for respondents; Edward G. Gruis, Deputy Gen. Counsel, Barry Grossman, Robert J. Wiggers, Washington, D.C., on brief.

Petition for review of an Order of the Federal Maritime Commission.

Before SKOPIL, FLETCHER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Totem Ocean Trailer Express, Inc. ("TOTE") is a common carrier by water operating between the States of Washington, Oregon and Alaska. TOTE petitioned the Federal Maritime Commission for an order declaring: in connection with motor-water through transportation of agricultural and other ICC-exempt [1] commodities between Alaska and the lower 48 states, (a) joint through rates [2] are impermissible, and (b) water carriers must file with the FMC their rates for the intercoastal portions of the transportation. The FMC denied the petition. TOTE seeks review under 28 U.S.C. § 2342 (1976).

## ISSUES

Two issues are presented for our review:

(1) Are joint through rates for motor-water transportation of ICC-exempt commodities in the Alaska trades permissible?

(2) If permissible, does the FMC have jurisdiction over all or any portion of such joint through rate activity?

We address the second issue first.

## JURISDICTION OVER JOINT THROUGH RATES

The only language in the Intercoastal Shipping Act helpful on this point appears in § 2:

> Every common carrier by water in intercoastal commerce shall file with the Federal Maritime Commission and keep open to public inspection schedules showing all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route; and, if a through route has been established, all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route and points on the route of any other carrier by water.

46 U.S.C. § 844 (1976). The FMC has interpreted this language to mean that the FMC does not have jurisdiction over motor-water

---

1. The Interstate Commerce Commission has jurisdiction over most interstate motor transportation. 49 U.S.C.A. §§ 10521–10529 (1981). However, the ICC does not have jurisdiction over motor vehicle transportation of agricultural and horticultural commodities and certain other commodities described in 49 U.S.C.A. § 10526(a)(6) (1981). By "ICC-exempt" commodities we mean commodities the transportation of which by motor vehicle is outside ICC jurisdiction.

2. A *joint through rate* is "a single charge published by one carrier and concurred in by connecting carriers as the rate that will apply for carriage along a through route." *Pennsylvania*

*v. I.C.C.*, 561 F.2d 278, 281–82 (D.C.Cir.1977). A *through route* is an agreement among carriers providing for a continuous line of carriage. *See Thompson v. United States*, 343 U.S. 549, 556–57, 72 S.Ct. 978, 982–83, 96 L.Ed. 1134 (1952); *Alaska Steamship Co. v. F.M.C.*, 399 F.2d 623, 626 (9th Cir. 1968). A *proportional rate* differs from a joint rate in that the proportional rate, though available in connection with a through route, is applicable only to that part of the through route handled by the rate-publishing carrier. *Pennsylvania*, 561 F.2d at 282. Generally, joint through rates are the most convenient and economical for shippers. *Id.*

joint through rates. *See Sea-Land Service, Inc.—Cancellation of Rates,* 11 F.M.C. 137, 142 n.6 (1967), *rev'd on other grounds sub nom. Sea-Land Service, Inc. v. F.M.C.,* 404 F.2d 824 (D.C.Cir.1968). This interpretation of the Intercoastal Shipping Act by the agency charged with its administration is entitled to considerable deference. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Takazato v. F.M.C.,* 633 F.2d 1276, 1278 (9th Cir. 1980). The D.C. Circuit also has interpreted § 2 as restricting FMC through route jurisdiction in interstate commerce to "those through routes that extend *in their entirety* from the coastal points on one water carrier's route to the coastal points on another water carrier's route, *i. e.,* that extend no further than from port to port." *Trailer Marine Transport Corp. v. F.M.C.,* 602 F.2d 379, 394 (D.C.Cir.1979). The D.C. Circuit has concluded that the FMC has no jurisdiction over the marine segment of an interstate through route where that route begins or ends at an inland point. *Id.* at 394–95; *Puerto Rico Maritime Shipping Authority v. I.C.C.,* 645 F.2d 1102, 1113 (D.C.Cir.1981) (citing and quoting *Trailer Marine Transport*). Insofar as joint rates are concerned, we agree with the FMC and the D.C. Circuit, for the reasons set forth in *Trailer Marine Transport,* 602 F.2d at 393–97. The FMC does not have jurisdiction over any part of a joint through rate offered in connection with combined motor-water transportation of ICC-exempt commodities in the Alaska trades.

## PERMISSIBILITY OF JOINT THROUGH RATES

We are concerned here only with motor-water transportation of ICC-exempt commodities in the Alaska trades. Motor-water joint through transportation of ICC-regulated commodities in the Alaska trades was authorized, and placed under exclusive ICC jurisdiction, by the Rivers Act in 1962.[3]

TOTE contends that the joint through rates at issue are impermissible because not specifically authorized by statute. However, the authorities relied upon by TOTE neither suggest nor hold that joint through rates require specific statutory authority. In *Petition of Matson Navigation Co. for an Order To Show Cause,* 11 S.R.R. 256 (1969), the offending carrier voluntarily ceased filing with the ICC joint through rates for motor-water transportation of ICC-exempt commodities in the Hawaii trades, and then chose to file only port-to-port rates with the FMC; the issue raised here was not addressed by the FMC. *Sea-Land Service, Inc.—Cancellation of Rates,* 11 F.M.C. at 142 n.6, indicates only that the FMC has no jurisdiction over motor-water joint through transportation; the case does not hold that such activity is impermissible. The absence of specific statutory authority does not of itself render the joint through rate activity impermissible.

The FMC argues, in contrast to the position taken by TOTE, that joint through rates existed prior to the advent of transportation regulation and do not depend on specific statutory authority. At the same time, however, the FMC acknowledges that limitations on permissible forms of transportation may result where portions of through routes are not subject to regulatory control. *See Cosmopolitan Shipping Co. v. Hamburg-American Packet Co.,* 13 I.C.C. 266, 279–81 (1908) (joint through rates between ICC-regulated rail carriers and unregulated ocean carriers prohibited); *Pennsylvania v. I.C.C.,* 561 F.2d 278, 283 (D.C.Cir.1977) (explaining *Cosmopolitan Shipping*). The FMC then fails to address the question of whether lack of regulatory control over the motor portion requires that joint through rates for ICC-exempt commodities in the Alaska trades be prohibited. Stated differently, does effective implementation of the Shipping Acts require that such joint through rates be prohibited?

---

**3.** Amending 49 U.S.C. § 316(c), since recodified at 49 U.S.C.A. § 10703 (1981). For a brief discussion of the Rivers Act and the problems it was intended to solve, *see Alaska Steamship Co. v. F.M.C.,* 399 F.2d 623, 624 n.1 (9th Cir. 1968).

■ The FMC never reached the question of implied prohibition in its Report and Order denying TOTE's petition because it had erroneously concluded that the Rivers Act warranted denial of the petition. The FMC inferred from the Rivers Act that Congress intended that joint through rates for motor-water transportation of ICC-exempt commodities in the Alaska trades would not be regulated by any agency. There is no basis for this "logical inference" in the language or legislative history of the Rivers Act.[4] TOTE has not argued implied prohibition because it has erroneously assumed that lack of express statutory authority is enough to defeat the joint rate activity.

■ Any attempt to answer the difficult question of implied prohibition must start with an examination of the text, purpose and legislative history of the Shipping Act.[5] This is another area where the FMC is entitled to considerable deference. *See*

*Udall*, 380 U.S. at 16, 85 S.Ct. at 801; *Takazato*, 633 F.2d at 1278. Therefore, we will give the FMC, which has a working understanding of the shipping industry, an opportunity to answer the question.[6]

Accordingly, we remand the case to the FMC for further consideration and explanation of whether effective implementation of the Shipping Acts requires that the joint through rates at issue be prohibited.

Remanded.

---

4. More likely it would have been illogical to give jurisdiction over such through movements to the ICC, since if offered separately the motor portion would be exempt from ICC regulation while the water portion would be within FMC jurisdiction.

Nor has the ICC, as claimed by the FMC, adopted the FMC's interpretation of the Rivers Act. In *Jurisdiction over Voluntary Tariff Filings—Exempt Commodities in Alaska Trades*, Docket No. 37410 (I.C.C. July 23, 1980), and *Substituted Service (Fishyback)—Water-For-Motor Service—Alaskan Trade*, 361 I.C.C. 359, 364–65 (1979), the ICC was concerned only with its own jurisdiction, and did not consider whether other agencies might have jurisdiction when it did not. Nor did the ICC in *Petition of Matson Navigation Co. for an Order to Show Cause*, 11 S.R.R. 256 (1969), suggest that joint rates for the transportation of commodities exempt from ICC regulation would not in any case be subject to the FMC's jurisdiction.

The FMC seems to confuse *lack of jurisdiction* with *exemption from regulation*. It is inaccurate to say that the Rivers Act extended an *exemption* for transportation of agricultural commodities to ICC regulation of joint through rates. The ICC simply does not have *jurisdiction* over motor-water transportation of agricultural commodities, whether by combinations of local or proportional rates or by joint through rates. 49 U.S.C.A. § 10526(a)(6) (1981). Congress did not give jurisdiction over all Alaska motor-water joint through rates to the ICC and then exempt from regulation joint

through rates for transportation of agricultural commodities. Had that been the case, the inference drawn by the FMC would be more compelling.

5. 46 U.S.C. §§ 801–842 (1979 Supp. III) (Shipping Act of 1916); 46 U.S.C. §§ 843–848 (1979 Supp. III) (Intercoastal Shipping Act of 1933). The FMC also may want to consider how this case differs from the analogous pre-Rivers Act regulation of water-rail through transportation under *Cosmopolitan Shipping Co. v. Hamburg-American Packet Co.*, 13 I.C.C. 266 (1908).

6. Without attempting to answer the difficult question posed herein, we note that more is at stake than jurisdiction over the water portion of motor-water transportation from ports to inland destinations. The FMC might lose regulatory control over port-to-port movements. *Cf. Alaska Steamship Co. v. F.M.C.*, 399 F.2d 623 (9th Cir. 1968) (holding that joint through rates consisting of Alaska-Seattle water transportation and incidental terminal motor pickup and delivery services were within ICC jurisdiction pursuant to the Rivers Act). If the activity at issue is permissible, then absent some limiting principle preventing application of *Alaska Steamship*, port-to-port water carriers of ICC-exempt commodities will be able to escape FMC jurisdiction merely by establishing joint through rates with motor carriers providing incidental terminal pickup and delivery services.