695 F.2d 409
 In re the Petition of Thomas J. BRADFORD, Roger D.
Cunningham, Gary M. Cooper, Dale Lloyd Ferguson, Curtis A.
Petersteiner, Barbara D. Stewart, Mark Richard Telegin,
Roger P. Williams, III, and Gary A. Kittelson, Petitioners,
v.
Honorable Raymond J. DONOVAN, Secretary of Labor, United
States Department of Labor, Respondent.
 No. 81-7836.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1982.
Decided Dec. 28, 1982.
 
 William F. Ferroggiaro, Jr., Eureka, Cal., for petitioners.
 Margrit Vanderryn, Washington, D.C., for respondent.
 
 
 1
 Petition for Review of a Decision of the Secretary of Labor.
 
 
 2
 Before FLETCHER and BOOCHEVER, Circuit Judges, and EAST,* Senior District Judge.
 
 EAST, Senior District Judge:
 
 3
 The petitioners, displaced employees of the Northwestern Pacific Railroad, applied for benefits under Title II of the Redwood National Park Expansion Act of 1978, Pub.L. No. 95-250, Secs. 201-213, 92 Stat. 163, 172-82. Title II provides unemployment and severance pay for forest product workers displaced by expansion of the Redwood National Park.[1] The Secretary of Labor denied petitioners benefits under the Act because he found they were not employees of an "affected employer" within the meaning of Section 201(9) of Title II, 92 Stat. 173.
 
 
 4
 We note jurisdiction under 16 U.S.C. Sec. 79l(h) and deny the petition for review.
 
 BACKGROUND:
 
 5
 The nine petitioners are displaced employees of Northwestern Pacific Railroad, a division of Southern Pacific Railroad. Northwestern operates primarily in Northern California and over 98% of its business consists of shipping carloads of wood products, mostly finished lumber, out of Northern California to national markets. Northwestern has suffered a substantial decline in business since the expansion of the Redwood National Park. This decline is, in part, attributable to the expansion.
 
 
 6
 In 1979, petitioners applied for benefits under Title II. The California Employment Development Department (EDD), the agency designated to process Title II claims, denied petitioners' applications because it found that they did not work for an "affected employer" as defined in Section 201(6) of Title II.
 
 
 7
 The petitioners and the EDD exhausted their respective administrative remedies and appealed to the Secretary.
 
 ISSUE:
 
 8
 Is Northwestern Pacific Railroad an affected contract employer within the meaning of Section 201(6) and (9) of Title II of the Redwood Park Expansion Act?
 
 DISCUSSION:
 
 9
 We adopt the test for review of the Secretary's interpretations of Title II suggested in Lanning v. Marshall, 650 F.2d 1055 (9th Cir.1981). According to Lanning, Section 213(f) mandates a two-step standard of review. First, if there are two reasonable interpretations of language in Title II, this court reviews to determine whether the Secretary has adopted the one most favorable to employees as a class. Second, if the Secretary offers the only reasonable interpretation of the language, his interpretation is entitled to great deference. Id. at 1057 n. 4.
 
 
 10
 Section 201(6) provides a general definition of the term "affected employer"; sections 201(7), (8) and (9) of Title II define three specific types of "affected employers": (1) affected woods employers; (2) affected mill employers; and (3) affected contract employers. Petitioners contend that their employer, Northwestern, meets the definition of an affected contract employer under Section 201(9). The term "affected contract employer" is defined in Section 201(9) of Title II as:
 
 
 11
 [A]n affected employer providing services pursuant to contract with an affected woods employer .... [Here follows a condition precedent not involved].
 
 
 12
 We do not subscribe to petitioners' contention which seemingly elects to bypass the statutory definition of the general term "affected employer" in Section 201(6). Section 201(6) of Title II defines the term "affected employer" as an employer "engaged in the harvest of timber or in related sawmill, plywood, and other wood processing operations." (Emphasis supplied). To qualify under Sections 201(7), (8), or (9), an employer must also meet the requirements of this general definition in Section 201(6).
 
 
 13
 The Secretary states in his letter opinion that the Railroad cannot qualify as an "affected contract employer" under Section 201(9) because it does not engage in the harvest of timber or in related sawmill, plywood, and other wood processing operations. To the contrary, "the Railroad hauled finished lumber products only after completion of harvesting, milling and other wood processing operations." Petitioners counter with the argument that the Railroad's lumber hauling activities constitute "other wood processing operations" and hence Northwestern meets the requirement of Section 201(6) and hence the first prong of the Section 201(9) definition. We deem that argument unreasonable.
 
 
 14
 We find no help from the legislative history of the Redwood Park Expansion Act. We glean, however, from the language of Title II that Congress did not intend to compensate every employee harmed by expansion of the Park. See Ashcom v. Donovan, 674 F.2d 805 (9th Cir.1982). See also 1978 U.S.Code Cong. & Ad.News at 463, 464 ("provisions are made to provide for the maintenance of an income for directly affected employees for a limited time." (Emphasis added)).
 
 
 15
 The Secretary argues that the term "other wood processing operations" should be interpreted in light of the other terms that appear in series with it, i.e., sawmill and plywood operations, and the harvesting of timber. See Section 201(6). From this application of the doctrine of ejusdem generis, the Secretary concludes that Congress intended the term "wood processing operations" to include no more than the steps in the process from harvesting raw timber in the forest through production of finished lumber.
 
 
 16
 We have received no advice from counsel at oral argument, nor have we found any material evidence on the record that convinces us that the railroad did more than haul lumber products from their place of production to a distant buyer. The Railroad was not involved in harvesting raw timber or in the further processing of timber into a marketable lumber product. A construction of the statute as entitling the employees of the Railroad or the buyers to the benefits of the Act would be without any foundation.
 
 
 17
 The petitioners tell us that the Secretary has considered the operators of the Arcata-Mad River Railway as an "affected employer" and make a semi-unequal treatment suggestion. The premise of the suggestion is unfounded. The unchallenged statement of the Secretary in his brief is that the Arcata-Mad River Railway is not certified as an affected employer. It is part of a "division of an affected woods employer" and its employees are eligible as employees of a part of a division of the Simpson Timber Company (Northern Operations), the affected employer. See Section 201(6).
 
 
 18
 We give the Secretary's ruling great deference and conclude that the doctrine of ejusdem generis dictates that the transportation of finished lumber is not the type of activity reasonably included in the term "related ... other wood processing operations."
 
 
 19
 The petition for review is denied and the letter opinion of the Secretary is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 In practical terms, the "expansion of the Redwood National Park" meant a cutoff of the supply of Redwood Timber from the expanded area which would have otherwise been available to producers or processors of Redwood Timber Products