693 F.2d 1296
 Melvin G. DRAPICH, Petitioner,
v.
Raymond J. DONOVAN,* Secretary of Labor, Respondent.
Gilbert R. DOERSCH, Petitioner,
v.
Raymond J. DONOVAN,* Secretary of Labor,
Respondent.
Elmer BUTOLPH and James M. Yarbrough, Petitioners,
v.
Raymond J. DONOVAN,* Secretary of Labor,
Respondent.
Carl W. DETHLEFS, Wilfred W. Johnson, et al., Petitioners,
v.
Raymond J. DONOVAN,* Secretary of Labor, Respondent.
 Nos. 80-7494 to 80-7496, 81-7619.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1982.
Decided Dec. 7, 1982.
As Amended Feb. 2, 1983.
 
 William F. Ferroggiaro, Jr., Eureka, Cal., for petitioners.
 Susan M. Webman, Washington, D.C., for respondent.
 Petition for Review of a Decision of the Secretary of Labor.
 Before FLETCHER and BOOCHEVER, Circuit Judges, and EAST,** District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Petitioners sought benefits under Title II of the Redwood Park Expansion Act of 1978, Pub.L. No. 95-250, 92 Stat. 163,[1] but their application was denied because the Secretary of Labor determined that their employer, McIntosh Lumber Company, was not an affected employer within the meaning of section 201(8) of Title II. Petitioners filed a timely appeal of the Secretary's determination. This court has jurisdiction to hear the appeal pursuant to 19 U.S.C. Sec. 2395 (Supp.IV 1980).[2]
 
 
 2
 Title II of the Redwood Park Expansion Act provides economic benefits to qualified forest industry workers who have been adversely affected by expansion of the Park. Generally, employees of "affected employers" are eligible for benefits under Title II. See Sections 201(10), 201(11). The Secretary of Labor has the responsibility to determine who is and who is not an "affected employer" for purposes of the Act. See Sections 202, 213.
 
 
 3
 Petitioners were all employees of McIntosh Lumber Company. Prior to its closure in October 1978, McIntosh operated a lumber manufacturing sawmill in Humboldt County, California. The Secretary determined that petitioners' employer was not an affected mill employer for purposes of Title II and, accordingly, denied petitioners' applications for Title II benefits.
 
 
 4
 Section 201(8) of Title II of the Act defines an affected mill employer as:
 
 
 5
 [A]n affected employer engaged in sawmill, plywood, and other wood processing operations in Humboldt or Del Norte Counties in the State of California who has either (A) obtained 15 per centum or more of its raw wood materials directly from affected woods employers during calendar year 1977, or (B) is a wholly owned mill of an affected woods employer: Provided, That an affected mill employer shall be only that major portion or division of the industry employer directly responsible for such wood processing operations.
 
 
 6
 Neither party disputes the following facts: In 1976, McIntosh purchased forty-five per cent of its raw wood supply from Arcata Redwood Company. The Secretary of Labor has determined that Arcata is an affected woods employer within the meaning of Title II, section 201(7) of the Park Expansion Act. In 1977, McIntosh purchased no raw wood supplies from an affected employer. Instead, McIntosh operated in 1977, and until closure in 1978, on its 1976 purchases of raw wood plus wood supplied from sources other than affected woods employers. According to industry practice, McIntosh regularly purchased and stockpiled logs between July and November, with the intention to use them as a source of work supply during the first half of the following year. Thus, of the raw logs purchased by McIntosh in 1977, it is undisputed that it failed to secure 15% of them from an affected woods employer; however, it is also undisputed that more than 15% of the raw logs McIntosh processed in 1977 were purchased from an affected woods employer, i.e., Arcata Redwood Company. The language of the statute, however, contains neither the word "purchase" nor the word "process." Rather, the statute speaks in terms of "obtaining" raw wood materials. The question presented by this appeal, therefore, is whether the Secretary of Labor correctly determined that McIntosh failed to "obtain" 15% of its raw wood supply from an affected woods employer in 1977.[3]
 
 
 7
 Petitioners argue, first, that the term "obtain" in section 201(8) should be construed broadly to encompass the processing of previously purchased logs. They also argue that even if "obtained" means no more than purchased, Congress' use of calendar year 1977 purchases as a yardstick for determining who may qualify as an affected mill employer is inconsistent with Congress' intent to use as a yardstick the last year of raw wood purchases unaffected by the Park Expansion Act. Logic and the evidence in the administrative record compel us to reject both of petitioners' arguments.
 
 
 8
 "In [petitioners'] definition of obtaining, the achievement of the economic goal, the entire process of acquisition and delivery commenced in 1976, and utilization achieved in 1977, is incorporated within the concept of obtaining." Petitioners' Brief at 18. This definition of the term is certainly more expansive than the ordinary understanding of "obtain." Moreover, petitioners' only basis on which to argue for this definition of "obtain" is an archaic connotation of the word. See Webster's Third New International Dictionary 1559 (unabridged). This effort to stretch the term "obtain" is unwarranted. Nowhere is it supported in the legislative history of Title II. See H.R.Rep. No. 95-581, 95th Cong., 2d Sess. 1, 17-57 reprinted in 1978 U.S.Code Cong. & Ad.News 463-487. The Secretary's reading of the term as roughly synonymous with "purchase" is reasonable, entitled to considerable deference, and likely more compatible with the intention of Congress in using the term "obtained" in section 201(8). We, therefore, adopt the Secretary's definition of the term. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Totem Ocean Trailer Express Inc. v. Federal Maritime Comm'n, 662 F.2d 563, 565 (9th Cir.1981); see also note 3 supra.
 
 
 9
 Petitioners' second argument, that Congress should have used calendar year 1976 raw wood purchases to determine who could qualify as an affected employer, likewise must be rejected. Petitioners probably are correct that Congress intended to use as a baseline for benefit determinations under the Expansion Act, the last year in which the economy in the area surrounding the Park was unaffected by the proposed expansion. Only by adopting such a baseline could Congress hope to measure accurately the adverse economic impacts of Park expansion. Petitioners also probably are correct that economic activity in calendar year 1977 does not reflect an economy in the Park area unaffected by the potential Park expansion.[4]
 
 
 10
 As petitioners point out, however, the Secretary of Interior, reported these problems to Congress in 1979. The Secretary specifically suggested that 1976 would provide a more accurate yardstick for measuring the adverse economic effects of Park expansion. Despite the Secretary's recommendation, Congress failed to amend the Expansion Act to provide for a 1976 baseline year. In the face of Congress' failure to act, we cannot rewrite section 201(8) to allow an employer to qualify as an affected mill employer based on the quantity of raw wood obtained in 1976 rather than 1977.
 
 
 11
 We recognize that petitioners appear to have suffered the type of adverse impact the Title II compensation program was intended to ameliorate. They were workers in that segment of the forest products industry directly affected by the expansion of Redwood National Park. Unfortunately, the statute by its terms did not include them among those who may benefit from the statute. Accordingly, we reluctantly affirm the decision of the Secretary of Labor.
 
 
 12
 AFFIRMED.
 
 
 
 *
 Substitution of Parties Pursuant to Fed.R.App.P. 43(c)
 
 
 **
 The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Title II of the Park Expansion Act is not codified in the United States Code. Accordingly, all section references are to the statutes at large section numbers
 
 
 [2]
 Petitioners state that their appeal to this court is authorized by 19 U.S.C. Sec. 2322 (1976). This section was repealed by an Act of Oct. 10, 1980, Pub. L. No. 96-417, Title IV, Sec. 612, 94 Stat. 1746. Jurisdiction of petitioners' appeal, however, is proper under 16 U.S.C. Sec. 79l (h) (Supp. IV 1980). Since the Secretary does not object to this court's exercise of jurisdiction under section 79l (h), we treat petitioners' appeal as if the proper section had been cited
 
 
 [3]
 Ordinarily, the interpretation of a statute, by the agency charged with implementing the statute, is entitled to considerable deference. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Totem Ocean Trailer Express, Inc. v. Federal Maritime Comm'n., 662 F.2d 563, 565 (9th Cir. 1981). Title II of the Redwood Park Act, however, contains a provision which modifies this standard somewhat. Section 213(f) instructs that, "In all cases where two or more constructions of the language of the title would be reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees." In Lanning v. Marshall, 650 F.2d 1055 (9th Cir.1981), this court suggested that section 213(f) requires two levels of review for the Secretary's interpretations of Title II. If there are two reasonable interpretations of language in Title II, we review to determine whether the Secretary has adopted the one most favorable to employees as a class. If, however, the Secretary offers the only reasonable interpretations of the language, his interpretation is entitled to the usual deference. Id. at 1057 n. 4. We have followed the Lanning standard in this case
 
 
 [4]
 For example, the State of California imposed a moratorium on timber harvesting in the proposed expansion area in February of 1977