David S. Krueger, Timothy P. Cissna, Stokes, Steeves, Warren, Jensen, Arcata, Cal., for petitioners.

Dennis A. Paquette, Washington, D.C., for respondent.

**Darrell BARNES, and J.J. Schroeder, Petitioners,**

**v.**

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Respondent.**

No. 82–7733.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1983.

Decided Nov. 22, 1983.

Before KENNEDY and REINHARDT, Circuit Judges, and HOFFMAN,* District Judge.

WALTER E. HOFFMAN, Senior District Judge:

Petitioners, Barnes and Schroeder, seek review of the Secretary's decision to deny their requests for severance benefits under the provisions of the Redwood Employee Protection Program. Petitioners are seasonal employees who were laid off prior to the conclusion of their usual work season. When seeking severance benefits, petitioners included the off-season period in their calculation of the twenty weeks of continuous layoff necessary to qualify under the

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Act. The Secretary held that off-season periods may not be counted towards entitlement to severance benefits. The validity of this ruling is the sole issue addressed on this appeal.[1]

When Congress decided to expand the Redwood National Park, it was concerned with the adverse economic impact of this expansion on employees of the forest products industry. *See* H.Rep. No. 95–581, 95th Cong.2d Sess. 28, *reprinted in* 1978 U.S. Code Cong. & Ad.News 463, 474. Consonant with this concern, Congress enacted the Redwood Employee Protection Program, Pub.L. No. 95–250, §§ 201–213, 92 Stat. 172 (1978) (REPP). Workers covered by REPP receive benefits if they are laid off within the designated period due to park expansion.

Petitioners applied for severance benefits under § 208(a) of the Act, which provides in part that an affected employee shall be paid severance pay if the employee "has been on a continuous layoff from employment with the employee's last affected employer for a period of at least twenty weeks subsequent to December 31, 1977."

Petitioner Barnes, a seasonal employee with a work season beginning April 1 and continuing for a period of 37 consecutive weeks, was laid off on September 29, 1980, and was not recalled to work until the following March 1981. Petitioner Schroeder, with a season of 42 consecutive weeks commencing April 1, was laid off on September 30, 1980, and was also not recalled to work until the following March 1981. Thus, both Barnes and Schroeder were unemployed for some time during their usual work season. To fulfill the twenty week continuous layoff requirement of § 208(a), however, petitioners must rely on several off-season weeks during which they would not have been working anyway.

In support of their argument that off-season weeks may be counted, petitioners point to § 201(12) of REPP which defines layoff to mean a "calendar week during which affected employers have made no work available to a covered employee." Petitioners contend that the plain language of this statutory definition dictates that off-season periods be included under the term "layoff."

The Secretary counters that § 208(a) must be interpreted in light of the fact that it provides for severance benefits, and the term severance is intended to apply where an employee is permanently separated from an employer. According to the Secretary, the twenty-week layoff period was included by Congress as a method of ascertaining the permanence of the separation. Since the nature of seasonal employment contemplates annual periods of continuous layoff, these off-season periods indicate nothing about the permanent severance of an employee. Therefore, off-season weeks should not be counted. The Secretary proposes instead that weeks of layoff at the end of one season should be added to weeks of layoff at the beginning of the following season when determining whether the twenty week layoff requirement has been satisfied.

The traditionally deferential review of a Secretary's decision has been altered by § 213(f) of REPP, which section directs that in "all cases where two or more constructions of the language of this title would be reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees." *See Brooks v. Donovan,* 699 F.2d 1010, 1011 (9th Cir. 1983); *Drapich v. Donovan,* 693 F.2d 1296, 1298 n. 3 (9th Cir.1982). This Court has interpreted § 213(f) to mandate two levels of review. If there are two reasonable

---

1. Petitioner Barnes raises the separate claim that the Secretary's review of Administrative Law Judge Michael A. DiSanto's decision in Barnes' favor was untimely. Judge DiSanto issued an opinion in favor of Barnes on June 12, 1981. Barnes argues that appeal must be taken within twenty, and at most thirty, days of an Administrative Law Judge's determina- tion. Without deciding the question of the applicable time limit within which the Secretary may review a decision, this court finds that the California Employment Development Department (hereinafter EDD) satisfied any timeliness requirement by filing a letter of appeal dated July 2, 1981, within twenty days of the decision.

interpretations of the language, review will focus on whether the Secretary adopted the interpretation most favorable to employees; if the Secretary offers the only reasonable interpretation, he will be accorded the usual deference. *Bradford v. Donovan,* 695 F.2d 409, 410 (9th Cir.1982); *Drapich v. Donovan,* 693 F.2d at 1298 n. 3; *Lanning v. Marshall,* 650 F.2d 1055, 1057–58 n. 4 (9th Cir.1981).

The threshold question, then, is whether petitioners propose an alternative interpretation that is reasonable. *Hoehn v. Donovan,* 711 F.2d 899, 900–01 (9th Cir.1983); *Noble v. Marshall,* 650 F.2d 1058, 1061, n. 8 (9th Cir.1981). This court finds that petitioners' interpretation of § 208(a) is patently unreasonable.

Although petitioners are correct that "layoff" is defined in a manner that would, if literally interpreted, encompass the off-season periods of seasonal employees, "[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones University v. United States,* —— U.S. ——, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). This general rule operates with full vitality when interpreting the provisions of REPP. *Brooks v. Donovan,* 699 F.2d at 1011 ("This court must look beyond the express language of a statute where a literal interpretation 'would thwart the purpose of the over-all statutory scheme or lead to an absurd result.'" (citation omitted)).

The manifest purpose behind § 208(a) is to determine eligibility for severance benefits. That section is so entitled, everything in § 208(a) is aimed exclusively towards this end, and the integrity of the comprehensive statutory scheme depends on the role of this provision in controlling eligibility for severance benefits. We cannot, therefore, agree with petitioners that the ordinary use of the label "severance payment" has little value in interpreting the meaning of § 208(a). A qualifying layoff must be defined in the context of identifying those employees eligible for severance benefits.

In both everyday usage and legal usage, the term severance pay connotes a permanent or final termination of the employment relationship. A seasonal employee's off-season period is not a severance and says nothing about an employee's possible severance. By implication, the term off-season indicates an ongoing relationship with the expectation of a resumption of work when the new season begins. Accordingly, there is no permanent separation and employees are not faced with any economic readjustment—that is the nature of seasonal employment. Support for this interpretation comes from the statute itself. Section 208(b) explicitly provides that severance benefits for seasonal employees are to be calculated according to the number of weeks in such employees' usual season. *See also* § 207(c) (in which provision weekly layoff benefits are based upon the number of weeks in a usual season). Thus, off-season periods are excluded from consideration.

Petitioners' construction of § 208(a) would obtain at least two incongruous results. First, a seasonal employee with a season of 32 weeks or less would be eligible for severance payments each year by virtue of the 20 off-season weeks. This is so even though the employee works the same number of weeks before and after park expansion, and the employer has obviously not severed the employment relationship.

Second, because section 208(c) provides that severance payments are to be repaid if the employee resumes industry employment in the affected area, seasonal employees who qualify would, in effect, be granted annual loans which they would pay back during the next season. This interpretation gives seasonal employees a benefit not accorded non-seasonal employees. REPP cannot be interpreted to extend so far.

Congress consistently distinguished seasonal from non-seasonal employees in the Act. When so doing, it repeatedly emphasized that for seasonal employees the focus is on their normal work season. *See, e.g.,*

§§ 207(c)(1)(B), 207(c)(2), 208(b). Petitioners may not resort to an unduly literal interpretation of the definition of "layoff" to eviscerate the clear intent of Congress. This Court finds that petitioners' interpretation is unreasonable. Off-season periods may not be counted towards the twenty weeks of layoff needed to establish eligibility for severance payment. The Secretary's interpretation is the only reasonable one, and it will therefore be accorded the usual deference.

For all of the foregoing reasons, the Secretary's decision is AFFIRMED.