730 F.2d 559
 Ted BENNETT, Harold D. Phenix, Robert J. Aronson, James L.
Dunsing, and Thomas R. Devore, Petitioners,
v.
Hon. Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Respondent.
 No. 82-7730.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1983.
Decided April 9, 1984.
 
 David S. Krueger, Stokes, Steeves, Warren & Jensen, Arcata, Cal., for petitioners.
 Sally E. Mathiasen, Assoc. Sol., Dept. of Labor, Washington, D.C., for respondent.
 Petition to Review a Decision of the Assistant Secretary of Labor.
 Before KENNEDY, REINHARDT, Circuit Judges, and HOFFMAN*, District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 Petitioners seek review of decisions by the Assistant Secretary of Labor denying them the weekly layoff benefits that are available to displaced lumber industry workers under Title II of the Redwood National Park Expansion Act (Redwood Act), Pub.L. No. 95-250, 92 Stat. 163 (1978).[1] We hold that the petitioners are eligible for the benefits and reverse the Assistant Secretary's decisions. In doing so, we reject his conclusion that petitioners' employer was not engaged in "wood processing operations."
 
 
 2
 Prior to the expansion of Redwood National Park, the five individual petitioners were employed by Simpson Building Supply Company, Arcata Distribution Center (hereinafter "SBS"). SBS is a division of Simpson Building Supply Company, a wholly owned subsidiary of Simpson Timber Company. In 1980, after being laid off from their jobs, petitioners applied for Redwood Act benefits. Title II of the Redwood Act authorizes benefit payments to persons who were employed by an "affected employer" and who were "adversely affected" by the Redwood National Park expansion. See Redwood Act Sec. 201(11). Concluding that SBS was not an "affected employer," the Assistant Secretary denied the petitioners' applications. We review his actions under 16 U.S.C. Sec. 79l (h) (1982).
 
 
 3
 * An "affected employer" must be "engaged in the harvest of timber or in related sawmill, plywood, and other wood processing operations and [must also be an] affected woods employer, affected mill employer, or affected contract employer." Redwood Act Sec. 201(6). Simpson Timber Company is an "affected employer" and, pursuant to 29 C.F.R. Sec. 92.8(b) (1981), was classified by the Secretary as an "affected woods employer" under Redwood Act Sec. 201(7). An "affected mill employer" is defined in section 201(8) of the Redwood Act as:
 
 
 4
 an affected employer engaged in sawmill, plywood, and other wood processing operations in Humboldt or Del Norte Counties in the State of California who has either (A) obtained 15 per centum or more of its raw wood materials directly from affected woods employers during calendar year 1977, or (B) is a wholly owned mill of an affected woods employer. (emphasis added).
 
 
 5
 Because SBS obtains all of its wood from Simpson Timber and is wholly owned by that company, it would be an "affected mill employer" under section 201(8) if it "engaged in sawmill, plywood, and other wood processing operations."[2] In oral argument, both parties agreed that the question whether SBS is an affected employer depends solely on whether its activities constitute "wood processing operations."[3]
 
 
 6
 In determining whether a person was employed by an "affected employer," the Secretary is required to follow the mandate of section 213(f). Section 213(f) provides that:
 
 
 7
 In all cases where two or more constructions of the language of this title would be reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees. The Secretary shall avoid inequities adverse to employees that otherwise would arise from an unduly literal interpretation of the language of this title.
 
 
 8
 In reviewing the Secretary's interpretation of section 201(6), we must determine whether there are two or more reasonable interpretations of that section, and if so, whether the Secretary has adopted the interpretation most favorable to employees as a class. See, e.g., David v. Donovan, 698 F.2d 1057, 1058 (9th Cir.1983); Drapich v. Donovan, 693 F.2d 1296, 1298 n. 3 (9th Cir.1982); Lanning v. Marshall, 650 F.2d 1055, 1057 n. 4 (9th Cir.1981).
 
 
 9
 Petitioners argue that, because SBS receives and remanufactures lumber that is not a finished product ready for marketing, it is engaged in wood processing operations. In contrast, the Secretary argues that SBS is not engaged in wood processing operations because it does not process raw logs--logs that have not previously been processed at all.
 
 II
 
 10
 We have held that " 'wood processing operations' ... include[s] ... the steps in the process from harvesting raw timber in the forest through production of finished lumber." Bradford v. Donovan, 695 F.2d 409, 411 (9th Cir.1982). Similarly, we have held that an employer engaged in "wood processing operations" must "perform one of the steps directly involved in the process of converting new timber into finished lumber." Hoehn v. Donovan, 711 F.2d 899, 901 (9th Cir.1983). In the case before us, SBS' remanufacturing of lumber is a step in the process; it is a part of the "further processing of timber into a marketable lumber product." Bradford v. Donovan, 695 F.2d at 411.
 
 
 11
 To require a "wood processing operation" to receive and manufacture only raw logs would limit wood processing to the very first stage of the production process. Such an interpretation ignores the industry's organization of labor into several discrete stages that, as a whole, produce marketable goods. Consequently, the Secretary's proposed interpretation would exclude much of the lumber industry from the benefit provisions of the Redwood Act.[4] In contrast, the petitioners' interpretation is not only reasonable, especially when considering the structure of the lumber industry, but it is more favorable to employees as a class. Accordingly, we conclude that SBS was engaged in "wood processing operations" and therefore is an "affected mill employer."
 
 CONCLUSION
 
 12
 We hold that SBS is an "affected employer" as defined in section 201(6) of the Redwood Act. Because the petitioners worked for an affected employer and were adversely affected by the Redwood National Park expansion, they are eligible for Redwood Act benefits. The Assistant Secretary's decision therefore is
 
 
 13
 REVERSED.
 
 
 
 *
 Honorable Walter Edward Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Title II of the Redwood Act is not codified
 
 
 [2]
 While a "woods employer" harvests timber, see Redwood Act Sec. 201(7), a "mill employer" processes timber that has been harvested, see Redwood Act Sec. 201(8)
 
 
 [3]
 Because of this concession, we need not decide whether the other requirements of sections 201(6) and 201(8) are met. The Secretary initially maintained that those subsections require an affected employer to be "engaged in sawmill, plywood, and other wood processing operations." We have held, however, that an affected employer need only be engaged in "activity reasonably included in the term 'related ... other wood processing operations.' " Bradford v. Donovan, 695 F.2d 409, 411 (9th Cir.1982); see Hoehn v. Donovan, 711 F.2d 899, 901 (9th Cir.1983). The Secretary's original contention was therefore in error
 
 
 [4]
 The Secretary contends that to interpret the term "wood processing operations" to include SBS' operations would expand the definition of affected employers to include retail lumber yards that use saws to trim lumber to the lengths ordered by customers. Such fears are unfounded, however, because, unlike retail lumber, the lumber received by SBS' remanufacturing operations is not a marketable product. Only after the lumber goes through the mass production process at SBS is it ready for marketing. Petitioners' union representative underscored that point in his testimony describing SBS' remanufacturing operation:
 [S]omehow I get the impression that we're talking about just doing a little trimming on some lumber here. When we crank that thing up, we--at the sawmill, you'd have to see it, there's a, a grader there, that grades out the good material, you've got fifteen piles of lumber, you're salvaging good stuff out of bad stuff, and producing a useful item out of waste--it's, it's much different than just saying, well we're going to take a, the rough edge, you know, cut the foot off the end and ship it out. It's, it's a miniature sawmill, is what it is, that takes about five men to operate....
 D-0025A A-0010-A