John William Cumming, Eureka, Cal., for petitioner.

Ramiro Salazar, U.S. Dept. of Labor, Washington, D.C., for respondent.

**Willie J. SORRELS, Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Respondent.**

No. 83–7600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1985.

Decided April 7, 1986.

Before WALLACE, SKOPIL, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

Petitioner Willie Sorrels seeks review of the Secretary of Labor's decision that he was disqualified for benefits under the Redwood Employee Protection Program ("REPP"). This is one of many appeals to this court pursuant to section 103(h) of the Redwood National Park Expansion Act of 1978 ("Redwood Act"), 16 U.S.C. § 79*l* (h) (1982), requiring us to interpret provisions of that Act. *See, e.g., Cavendar v. Donovan,* 752 F.2d 1376 (9th Cir.1985); *Barnes v. Donovan,* 720 F.2d 1111 (9th Cir.1983);

*Lanning v. Marshall,* 650 F.2d 1055 (9th Cir.1981).

The Redwood Act was passed in 1978. It "provides income and benefits for six years and retraining and job relocation expenses for employees who lose their jobs as a result of the expansion of the [Redwood National] Park." *Local 3–98, International Woodworkers of America v. Donovan,* 713 F.2d 436, 437 (9th Cir.1983).

Title II of the Act provides that any "layoff" of a covered employee between May 31, 1977, and September 30, 1980 (the "window period"), "is conclusively presumed to be attributable to the expansion of Redwood National Park." Title II, Redwood Act, Pub.L. No. 95–250, § 203, 92 Stat. 163, 175. A "covered employee" is an employee who, among other criteria, works for an affected employer.[1] Redwood Act § 201(10).[2] Such employees are entitled to benefits for the duration of the Act's coverage, subject to an offset for income earned from other employment. Redwood Act § 207(e)(1).

Sorrels originally was laid off from Redwood Construction Company, an affected employer, and became eligible for benefits on May 8, 1978. This was during the window period. He subsequently obtained seasonal employment with Gary Giannandrea, another affected employer, until April 1981. At that time, Giannandrea told him that the season would be very short, and that if he had a better job offer it would be wise for him to accept it. Accordingly, the following month, Sorrels accepted a less remunerative job as a truck driver with an employer not covered by the Act.

Throughout the period between his 1978 layoff and his departure from his job with Giannandrea, Sorrels continued to receive benefits to compensate him for his loss of income following the 1978 layoff.

After his departure from Giannandrea, however, the Secretary concluded that Sorrels was no longer qualified for benefits as an affected employee. The Secretary held that Sorrels was not eligible for benefits because he had not been "laid off" by Giannandrea in April 1981. The Secretary relied upon section 205(b) of the Act which provides that an employee shall be eligible for each week of "total or partial layoff," and upon the definition of total and partial layoff contained in section 201(12). That section provides:

"total layoff" means a calendar week during which affected employers have made no work available to a covered employee and made no payment to said covered employee for time not worked, and "partial layoff" means a calendar week for which all pay received by a covered employee from affected employers is at least ten per centum less than the ... benefit that would have been payable for that week had said covered employee suffered a total layoff. ...

The Secretary concluded that because Giannandrea still had work available for Sorrels the week that he left, Giannandrea had not "laid off" Sorrels and that therefore Sorrels was not eligible for benefits. The Secretary thus ruled in effect that once Sorrels left his employment with his second employer, Giannandrea, he was required to reestablish his eligibility for benefits.

1. An "affected employer" is a "business entity ... which is engaged in the harvest of timber or in related sawmill, plywood, and other wood processing operations...." Redwood Act § 201(6). *See also* § 201(7–9) (defining "affected woods employer," "affected mill employer," and "affected contract employer").

2. Section 201(10) provides:
 (10) "covered employee" means an employee who—
  (A) had seniority under a collective bargaining agreement with an affected employer as of May 31, 1977, has at least twelve months of creditable service as of the date of enactment of this section, and has performed work for one or more affected employers on or after January 1, 1977, or
  (B) has performed work for one or more affected employers for at least one thousand hours from January 1, 1977, through the period to the date of enactment of this section, and has a continuing employment relationship with an affected employer, as determined by the Secretary, as of the date of enactment of this section or if laid off on or after May 31, 1977, had such a relationship as of the date of such layoff. ...

Sorrels, on the other hand, argues that his qualification for benefits rests upon his layoff in 1978 when he became an "affected employee" within the meaning of section 201(11).[3] He argues that he should not be disqualified from receiving benefits because he left subsequent employment in anticipation of inevitable loss of work. Under his interpretation of the applicable provisions, he was "laid off" under section 201(12) after his original window period layoff during weeks in which his earnings failed to amount to at least 90% of his REPP weekly layoff benefit amount.

Our decision in *Local 3–98, International Woodworkers of America v. Donovan*, 713 F.2d 436 (9th Cir.1983), supports Sorrels' position. In *Local 3–98*, we invalidated the Secretary's regulation that required employees who initially had been laid off during the window period to reestablish their eligibility for benefits. We held that when an employee, like Sorrels, qualifies for benefits during the window period, the Redwood Act triggers his eligibility for benefits, and a resumption of work either within or outside the industry merely offsets the amount of the benefits received.

In *Local 3–98*, the Secretary acknowledged that qualified employees who found employment outside the timber industry (as opposed to employment with an affected employer) continue to be on "layoff" status and eligible for benefits under the Act, regardless of the availability of work from a non-affected employer. *Id.* at 440. That result is required by section 207(e) of the Act, which provides that "layoff" benefits shall be reduced by the full amount of income earned from any source during the benefit period. The statute thus contemplates that an eligible employee retains layoff status even after obtaining other employment. We observed in *Local 3–98* that an affected employee who takes subsequent employment with a non-affected employer unquestionably would remain qualified for benefits. We held that an employ-

ee who accepts employment with an affected employer should not be disadvantaged. It follows that the employee in this case, Sorrels, who accepted subsequent employment with an affected employer should not have to reestablish eligibility for benefits.

Sorrels' interpretation also is consistent with other decisions of the Secretary in cases similar to this. In *In the Matter of Donovan W. Tolman*, No. SF–REPP–12882 (D.O.L. Apr. 30, 1985) and *In the Matter of Ladd V. Kirk*, No. SF–REPP–14208 (D.O.L. Feb. 6, 1985), the Secretary held that an employee who became eligible for benefits as an affected employee did not lose that eligibility by accepting temporary employment with another affected employer and then quitting that position to accept permanent employment elsewhere. The Secretary expressly followed *Local 3–98 v. Donovan*, stating that "an employee laid off during the window period generally should not be disadvantaged on the basis of whether he accepts subsequent employment with an affected employer or with a non-affected employer." The Secretary's interpretation of the statute in those cases was reasonable, and is, in our view, similarly applicable to this case.

The Secretary here does not repudiate those decisions, but attempts to distinguish this case on the ground that Sorrels worked longer for the second affected employer than did the employees in *Kirk* and *Tolman*. We do not find the distinction meaningful. In this case, as in *Kirk* and *Tolman*, the employee qualified for benefits on the basis of an initial layoff during the window period, and left subsequent employment because the employee knew that the employment was not permanent.

We do not need to decide whether the Secretary's interpretation advanced in this case is unreasonable. The Act provides that where there are two reasonable interpretations we must choose the one that is most favorable to the employee. Redwood

---

**3.** Section 201(11) provides that "affected employee" means "a covered employee who is either totally or partially laid off by an affected employer within a time period beginning on or after May 31, 1977, and ending September 30, 1980, unless extended, ... or is determined by the Secretary to be adversely affected by the expansion of the Redwood National Park...."

Act § 213(f); *see also David v. Donovan*, 698 F.2d 1057, 1058 (9th Cir.1983); *Local 3–98, International Woodworkers of America v. Donovan*, 713 F.2d at 437.

Reversed and remanded.

WALLACE, Circuit Judge, dissenting:

The majority concludes that Sorrels's proposed interpretation of Title II of the Redwood National Park Expansion Act of 1978, Pub.L. No. 95–250, §§ 201–213, 92 Stat. 163 (Redwood Act), is reasonable and, therefore, that an employee who voluntarily leaves employment "in accurate anticipation of inevitable loss of work" has been "laid off" within the meaning of the Redwood Act. I disagree.

The Redwood Act provides that if there are two reasonable interpretations of a provision, the Secretary must adopt the interpretation that is most favorable to the employees as a class. Redwood Act § 213(f). I find the Secretary's interpretation reasonable. Thus, the critical question is whether Sorrels proposes an interpretation that is reasonable. *Barnes v. Donovan*, 720 F.2d 1111, 1113 (9th Cir.1983). If Sorrels's interpretation is "beyond the plain meaning" of the involved section of the Redwood Act, it is not reasonable. *Hoehn v. Donovan*, 711 F.2d 899, 901 (9th Cir.1983) (*Hoehn*).

The majority relies on *Local 3–98, International Woodworkers of America v. Donovan*, 713 F.2d 436 (9th Cir.1983) (*Local 3–98*), to support Sorrels's interpretation of the Redwood Act. *Local 3–98*, however, does not help resolve the issue before us. In *Local 3–98*, we held that it was a reasonable interpretation of section 203 that an employee who has suffered a layoff during the window period retains his affected status notwithstanding later employment with another affected employer. *Id.* at 439–40. *Local 3–98* does not, however, suggest that the affected employee need not meet the additional eligibility requirement of section 205(b) that limits benefits to "each week of total or partial layoff." In *Local 3–98*, we did not examine the eligibility provision of section 205(b). That is the critical provision in this case.

The majority also relies on language in *Local 3–98* that suggests employees who are laid off and then accept work with an affected employer should not be treated differently than employees who find employment outside the industry. *Id.* at 440. But that language cannot be relied on to modify the plain meaning of the Redwood Act, *see Hoehn*, 711 F.2d at 901; *Rains v. Donovan*, 702 F.2d 182, 184 (9th Cir.1983) (*Rains*), or to extend benefits to individuals that Congress never intended to be compensated. *See Lanning v. Marshall*, 650 F.2d 1055, 1058 (9th Cir.1981). In *Local 3–98*, we premised our discussion of the potential for unequal treatment on the fact that Congress's principal concern was to compensate displaced workers for job loss. *Local 3–98*, 713 F.2d at 440. An individual who voluntarily quits work to accept better employment is not displaced. Consequently, the worker should not receive the benefits of the Redwood Act. *Cf. Cavender v. Donovan*, 752 F.2d 1376, 1377 (9th Cir. 1985) (per curiam) (individual who voluntarily quit for personal reasons not entitled to benefits).

The language of section 205(b) is very clear: a partial or total layoff is a prerequisite to receiving benefits. Sorrels's interpretation of the term "layoff" to include an employee who voluntary quit because he anticipated an inevitable loss of work is beyond the plain meaning of the Redwood Act and unreasonable. I foresee serious problems with Sorrels's proposed interpretation because it would permit affected employees to quit work and claim benefits based not on a layoff, but rather on their predictions that a layoff might occur sometime in the future. Such an expansive interpretation of the Redwood Act is both unwarranted and unreasonable. *Cf. Rains*, 702 F.2d at 184 (rejecting expansive interpretation of section 201(9) because of specific and narrow language of the Act).

Interestingly enough, had he remained working for Giannandrea, Sorrels could have continued working for the normal length of the season. Additionally, there is no finding that he could not have continued

working for Giannandrea during the following season. I therefore have some doubt that there was demonstrated an "inevitable loss of work" that Sorrels "accurately anticipated."

I also disagree with the majority's reading of *Ladd v. Kirk*, No. SF–REPP–14208 (D.O.L. Feb. 6, 1985) (*Kirk*), and *In the Matter of Donovan W. Tolman*, No. SF–REPP–12882 (D.O.L. Apr. 30, 1985) (*Tolman*). In *Kirk*, the Secretary specifically stated that his reasoning applied only to those situations in which the affected employee had quit temporary employment. *Tolman* also emphasized that the employee was only temporarily employed. Sorrels never alleged that his employment with Giannandrea was temporary. Thus, *Kirk* and *Tolman* are distinguishable. I would interpret *Kirk* and *Tolman* to mean that a person who accepts temporary employment after being laid off continues to be laid off for the purposes of sections 201(12) and 205(b) because the worker has never been permanently reemployed. Consequently, the affected employee can still receive benefits based on the first layoff even though the worker voluntarily quits temporary employment.

This case involves a statutory scheme that is designed to compensate displaced workers for job loss resulting from Redwood Park expansion. The majority, however, has ignored the controlling language of the Redwood Act and adopted an interpretation of the term "layoff" that is beyond the plain meaning of the Redwood Act and, therefore, is unreasonable. For that reason, I respectfully dissent.