See also 634 F.2d 634.

David R. Belding, Breen, Young, Whitehead, Belding & Hardesty, Reno, Nev., for plaintiff-appellant.

Brooke Nielsen, Deputy Atty. Gen., Carson City, Nev., for defendants-appellees.

Before GOODWIN, SCHROEDER and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Juanita Glosen appeals from an order entered February 24, 1983 in the District of Nevada, Bruce R. Thompson, *District Judge,* which in effect refused to impose liability on the State of Nevada for damages under 42 U.S.C. § 1983 (Supp. V 1981) and attorney's fees under 42 U.S.C. § 1988 (Supp. V 1981). Appellant invites us to deny to the State of Nevada its Eleventh Amendment immunity from § 1983 actions seeking retroactive relief. We decline the invitation and affirm the order of the district court.

**Juanita GLOSEN, individually and as Guardian and Next Friend of Charles M. Glosen, a minor, Plaintiff-Appellant,**

v.

**Homer Lee BARNES, Darrel R. Daines, Controller, and Patty Cafferata, Treasurer of the State of Nevada, Defendants-Appellees.**

No. 83–1840.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1983.

Decided Feb. 2, 1984.

* Of the Second Circuit, by designation.

## I.

On February 9, 1975, Charles M. Glosen was shot and killed by Homer Lee Barnes in Washoe County, Nevada. At the time, Barnes was a drug enforcement agent employed by the State of Nevada.

On May 8, 1975, Glosen's wife, Juanita (appellant), commenced an action in the District of Nevada pursuant to § 1983 alleging that state law enforcement officials [1] had engaged in concerted activity to interfere with and deprive Glosen of his civil right to life.[2] Although the State of Nevada was not a named defendant, its Attorney General undertook the defense of this action and, either officially or through private counsel retained by the Attorney General, represented the named defendants at trial.

On August 30, 1977, the court held that Barnes willfully and maliciously had violated Glosen's right to life. The court rendered judgment against him for $25,000 in general damages, $25,000 in exemplary damages, $20,000 attorney's fees, and interest. We subsequently affirmed the judgment of damages. *Glosen v. Barnes,* 634 F.2d 634 (9th Cir.1980).[3] Glosen filed a claim with the State of Nevada seeking payment of the entire judgment against Barnes. The State of Nevada refused to pay.

On December 20, 1982, appellant filed a motion in the district court requesting that an order to show cause issue to the State Treasurer and State Controller requiring them to issue warrants and drafts for the amounts of the general damages and attorney's fees.[4] On February 24, 1983, the court denied appellant's motion on the ground that the Eleventh Amendment

barred the relief sought. This appeal followed.

## II.

The Eleventh Amendment to the United States Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

In the landmark Eleventh Amendment case of *Edelman v. Jordan,* 415 U.S. 651 (1974), the Supreme Court established a clear dichotomy of prospective versus retroactive relief for actions against states in the federal courts:

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex parte Young,* [209 U.S. 123 (1908)], and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury,* [323 U.S. 459 (1945)]."

*Edelman, supra,* 415 U.S. at 677; *see also Washington State Health Facilities Association v. Washington Department of Social and Health Services,* 698 F.2d 964, 966 (9th Cir.1982). Conceding the binding effect of *Edelman,* appellant nevertheless argues, based on historical analysis and the progeny of *Edelman,* (1) that Congress has the constitutional power to impose liability on the states for damage awards for civil rights violations; and (2) that Congress exercised that power in enacting § 1983. Appellant's argument is based in large part on the

---

**1.** This first action named only individuals as defendants so as to conform with *Monroe v. Pape,* 365 U.S. 167 (1961), and its holding that municipal corporations are not "persons" within the meaning of § 1983. In *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978), the Supreme Court overruled *Monroe* and specifically rejected that holding.

**2.** The action also sought the return of a diamond ring that the agents had removed from

the body of Glosen after they killed him. This relief was granted.

**3.** We remanded for a hearing on attorney's fees. After a hearing on the matter on January 9, 1981, the district court affirmed its original award.

**4.** This would be the appropriate procedure to enforce the judgment if the State were liable. *Spain v. Mountanos,* 690 F.2d 742 (9th Cir. 1982).

concurring opinions of Justice Brennan in *Hutto v. Finney,* 437 U.S. 678, 700–04 (1978) (Brennan, J., concurring), and in *Quern v. Jordan,* 440 U.S. 332, 349–66 (1979) (Brennan, J., concurring).

Appellant goes on to point out that in *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976), the Supreme Court held that the state sovereignty principle of the Eleventh Amendment is limited by the legislative enforcement provision of § 5 of the Fourteenth Amendment:

> "We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."

*Id.* at 456 [footnote omitted]. Later, in *Monell v. Department of Social Services of New York, supra* note 1, 436 U.S. at 690, the Court, after an analysis of the legislative history of the precursor of § 1983, concluded that Congress did intend municipalities and other local government units to be included among those persons against whom § 1983 actions could be brought. The Court in *Monell* observed:

> "That the 'usual' meaning of the word 'person' [as used in § 1983] would extend to municipal corporations is also evidenced by an Act of Congress which had been passed only months before the Civil Rights Act was passed. This Act provided that
>
> > 'in all acts hereafter passed ... the word "person" may extend and be applied to bodies politic and corporate ... unless the context shows that such words were intended to be used in a more limited sense.' Act of Feb. 25, 1871, § 2, 16 Stat. 431."

*Id.* at 688.

Based on *Monell,* appellant, following the lead of Justice Brennan,[5] argues that "body politic" is now, and would have been in 1871 when the precursor to § 1983 was passed, a

synonym for the word "state". Justice Brennan's conclusion, based on his view of the legislative history, is that Congress determined that the precursor to § 1983 was legislation appropriate to enforce the provisions of the Fourteenth Amendment. That is to say, according to Justice Brennan, that § 1983 meets the *Fitzpatrick* test and the Eleventh Amendment does not immunize states from actions brought pursuant to that statute. *Quern, supra,* 440 U.S. at 365–66 (Brennan, J., concurring).

Justice Rehnquist, writing for a seven-justice majority in *Quern,* based on his analysis of the legislative history, rejected the analysis of Justice Brennan:

> "We therefore conclude that neither the reasoning of *Monell* or of our Eleventh Amendment cases subsequent to *Edelman,* nor the additional legislative history or arguments set forth in Mr. Justice Brennan's opinion, justify a conclusion different from that which we reached in *Edelman.*
>
> There is no question that both the supporters and opponents of the Civil Rights Act of 1871 believed that the Act ceded to the Federal Government many important powers that previously had been considered to be within the exclusive province of the individual States. Many of the remarks from the legislative history of the Act quoted in Mr. Justice Brennan's opinion amply demonstrate this point.... But neither logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants, a leap from this proposition to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States." (footnotes and citations omitted).

440 U.S. at 341–42.

We hold that *Quern* conclusively forecloses appellant's claim that the State of Nevada is not entitled to Eleventh Amendment

**5.** *Hutto, supra,* 437 U.S. at 703 (Brennan, J., concurring), and more fully in *Quern, supra,* 440 U.S. at 355–66 (Brennan, J., concurring).

immunity from retroactive relief in § 1983 actions. *McConnell v. Critchlow,* 661 F.2d 116, 117 (9th Cir.1981).

### III.

Appellant also seeks attorney's fees pursuant to 42 U.S.C. § 1988. She relies on *Hutto v. Finney,* 437 U.S. 678 (1978). The retroactive/prospective relief dichotomy, however, also was applied in *Hutto.* There, attorney's fees were awarded to plaintiffs who were successful in obtaining *prospective* relief from the state on the substantive claim.[6] It is clear, at least by implication, that the Court intended that attorney's fees should be denied in a case which involves retroactive liability for prelitigation conduct.[7] In the instant case, the action was commenced to obtain compensation for prelitigation conduct. It would be anomalous to require the state to pay attorney's fees when the Eleventh Amendment and *Quern* bar recovery of damages from the state. We hold, under *Hutto,* that a plaintiff cannot recover attorney's fees from a state under § 1988 when the underlying § 1983 action involved retroactive liability for prelitigation conduct and when the state is immunized from liability by the Eleventh Amendment.

*Affirmed.*

---

6. We have allowed attorney's fees under § 1988 when plaintiffs sought and obtained *prospective* relief in the underlying § 1983 action. *Spain v. Mountanos,* 690 F.2d 742 (9th Cir.1982).

7. In response to the Attorney General's argument that the Supreme Court refused to impose retroactive liability on states in *Employees v.*

*Missouri Public Health & Welfare Department,* 411 U.S. 279 (1973), and *Edelman v. Jordan, supra,* we note that the Court in *Hutto* observed: "But these cases concern retroactive liability for prelitigation conduct rather than expenses incurred in litigation seeking only prospective relief." *Hutto, supra,* 437 U.S. at 695.