736 F.2d 550
 Carolyn R. LAURITZEN, Lesbian and Gay Community Center, San
Diego, The Military Law Panel, National Lawyers
Guild, San Diego, Plaintiffs-Appellees,
v.
Secretary of the Navy, John LEHMAN, Defendant-Appellant.
 Nos. 82-6020, 82-6045.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 8, 1984.
Decided July 5, 1984.
 
 Susan McGreivy, Lorraine L. Loder, Los Angeles, Cal., for plaintiffs-appellees.
 Robert Rubin, San Francisco, Cal., for amicus.
 Nicholas Z. Zeppos, Dept. of Justice, Washington, D.C., for defendant-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and BOOCHEVER, Circuit Judges, and SOLOMON*, District Judge.
 SNEED, Circuit Judge:
 This appeal is from an order awarding attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412. We reverse and remand this case for further proceedings consistent with our decision.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 1
 Plaintiff Carolyn R. Lauritzen alleged in this action that she was threatened with discharge from the Navy and that her rank and pay were reduced as result of her statements to a Navy psychiatrist that she might have homosexual tendencies. Lauritzen sought damages and prospective relief on the grounds that the Navy's actions violated her constitutional rights. The district court issued a preliminary injunction and ordered Lauritzen to seek review of her discharge order from the Board for Correction of Naval Records (BCNR). The BCNR ordered that Lauritzen's file be purged of material pertaining to the intended discharge, and that her rank and pay be retroactively restored. Because the BCNR granted Lauritzen substantially all of the relief she had sought in the court action, the district court dismissed the case as moot.
 
 
 2
 Lauritzen requested an award of attorney's fees pursuant to sections 2412(b) and 2412(d)(1)(A) of EAJA. Section 2412(b) gives the court discretion to award fees to a prevailing party and provides that the United States "shall be liable ... to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[1] In contrast to the discretionary awards under section 2412(b), section 2412(d)(1)(A) provides that attorney's fees shall be awarded to a party prevailing in a civil action against the government "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[2]
 
 
 3
 The district court refused to award fees under section 2412(d)(1)(A) because it found that the government's position in the litigation was substantially justified. Lauritzen v. Secretary of the Navy, 546 F.Supp. 1221, 1226 (C.D.Cal.1982). Section 2412(b), the district court concluded, authorized a fee award because Lauritzen's claim was "virtually identical to an action under [42 U.S.C.] Sec. 1983, the only difference being that this action involves a federal official acting under the color of federal law." 546 F.Supp. at 1227.[3] The district court reasoned that because "a state official would be liable for fees under [42 U.S.C.] Sec. 1988 in a Sec. 1983 action alleging constitutional violations of the type asserted here, the United States should be held liable, pursuant to Sec. 2412(b), for attorney's fees equivalent to those available under Sec. 1988." 546 F.Supp. at 1227. The district court awarded fees totalling $20,267.50. The government filed a timely notice of appeal and Lauritzen filed a timely cross-appeal. We reject both the district court's reasoning and its conclusion.
 
 II.
 DISCUSSION
 
 4
 Because this appeal raises issues concerning the proper interpretation of EAJA in awarding fees, our review is de novo. See Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark, 720 F.2d 1475, 1481 (9th Cir.1983).
 
 
 5
 A. The Fee Award Pursuant to Section 2412(b)
 
 
 6
 The government argues that section 2412(b) does not authorize fee awards in cases that are "analogous" to section 1983 suits. To clarify the contentions of the parties, we set forth the key sentence of section 1988 on which Lauritzen relies:
 
 
 7
 "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 
 
 8
 Lauritzen interprets section 2412(b) as if section 1988 contained the following language after the phrase "and 1986 of this title":
 
 
 9
 any rights against the United States, its officials, or employees analogous to those protected by the foregoing sections,"
 
 
 10
 Insisting that section 1988 must be read as it is written, i.e., without this additional language, the government maintains that it may be liable for fees under that section only if it has violated a provision actually named therein. For example, if the government violates Title VI or Title IX, sections 2412(b) and 1988 would authorize a fee award against the United States. We agree with the government.
 
 
 11
 Our starting point is the language of section 2412(b). See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). It authorizes fee awards under the common law exceptions to the American rule that a party pays its own fees or "under the terms of any statute which specifically provides for such an award." 28 U.S.C. Sec. 2412(b) (emphasis added). The most nearly applicable such statute is section 1988. Lauritzen, as the district court acknowledged, 546 F.Supp. at 1224, could not obtain a fee award under the express language of section 1988, because she did not allege a violation of any of the specific provisions enumerated under that act. Other courts have held that in these circumstances fees should not be awarded under section 2412(b). E.g., Saxner v. Benson, 727 F.2d 669, 673 (7th Cir.1984); Unification Church v. INS, 574 F.Supp. 93, 96 (D.D.C.1983); United States v. Miscellaneous Pornographic Magazines, 541 F.Supp. 122, 127-29 (N.D.Ill.1981).
 
 
 12
 The district court, however, relied on the legislative history and policy of EAJA to give section 2412(b) a broader meaning that, in effect, expands the coverage of section 1988. The Eighth Circuit recently employed a similar approach to reach the same conclusions as did the district court here. See Premachandra v. Mitts, 727 F.2d 717, 727 (8th Cir.1984). We believe, however, that neither the legislative history nor the policy of EAJA compels a departure from the actual language of sections 2412(b) and 1988.
 
 
 13
 The primary purpose of Congress in enacting section 2412(b) was to apply the common law exceptions to the American rule to the federal government. See H.R.Rep. No. 1434, 96th Cong., 2d Sess. 25, reprinted in 1980 U.S.Code Cong. & Ad.News 4953, 5003, 5014. The House Report notes two cases that refused to apply common law exceptions to the government--Pealo v. Farmers Home Administration, 562 F.2d 744 (D.C.Cir.1977) (rejecting "common benefit" exception), and Rhode Island Committee on Energy v. General Services Administration, 561 F.2d 397 (1st Cir.1977) (refusing to apply "bad faith" exception). Immediately following, the Report states "[t]his subsection reflects the belief that at a minimum, the United States should be held to the same standard in litigating as other parties and that no justification exists for excepting the United States from fee awards in these limited situations." H.R.Rep. No. 1434, supra, at 17, 1980 U.S.Code Cong. & Ad.News at 4996.
 
 
 14
 That section 2412(b) might reach beyond these limits is suggested by the House Report, which observes that the section also makes the government "liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise. This subsection clarifies the liability of the United States under such statutes as [section 1988], as well." Id. These comments, we believe, indicate that section 2412(b) authorizes fee awards against the United States under the terms of statutes allowing fees against "any party" or "any person."[4] This is the approach adopted in Natural Resources Defense Council v. EPA, 484 F.2d 1331, 1335-36 & n. 5 (1st Cir.1973) (allowing fee award against government under Sec. 304(a) of Clean Air Act), a case which House reports cite approvingly for the proposition that the history of section 2412 "reflects a strong movement by Congress toward placing the Federal Government and civil litigants on a completely equal footing." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4987; H.R.Rep. No. 1434, supra, at 25, 1980 U.S.Cong. Code & Ad.News at 5014. We follow this approach here.
 
 
 15
 The district court, however, found that EAJA reaches further and authorizes fee awards in suits analogous to those brought against state officials under section 1983. In doing so it relied on the following circumstances. Senate Bill 265, as originally proposed in 1979, provided in section 2412(b) that the United States should be liable to the same extent as a "private party" would be liable. See Award of Attorneys' Fees Against the Federal Government: Hearings on S.265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Comm., 96th Cong., 2d Sess. at 3, 9 (1980) [hereinafter cited as "Hearings on S.265"]. After hearing testimony on S.265, a House subcommittee amended the proposed language of section 2412(b) so that the final version made the United States liable to the same extent as "any other party," rather than "a private party," would be liable. See H.R.Rep. No. 1418, supra, at 4.
 
 
 16
 Nothing in the legislative reports explains the reason for this change. The district court inferred that it was in response to testimony of Mr. Armand Derfner, who appeared on behalf of the Lawyers Committee for Civil Rights Under Law and the American Civil Liberties Union. Mr. Derfner told the subcommittee:
 
 
 17
 Mr. Kastenmeier, if I could just direct myself to one portion of this bill?
 
 
 18
 There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.
 
 
 19
 In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the Newman v. Peggy [Piggie] [sic] Park standard. These bills say that the United States should pay fees--in the amendment to 28 United States Code 2412--in those circumstances where the court may award such fees in suits involving private parties.
 
 
 20
 That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.
 
 
 21
 Hearings on S.265 at 100. In effect, the district court relied on this testimony to conclude that Congress substituted the phrase "any party" for the phrase "any private party" in order to place upon section 1988 the gloss articulated above which, in turn, gives section 2412(b) the reach ascribed to it. That the gloss, suitably rephrased, might bypass section 1988 and fasten itself directly upon section 2412(b), is of no consequence. The issue remains the same. Is the gloss justified by the legislative history? We think not.
 
 
 22
 We are hesitant to give Mr. Derfner's testimony dispositive weight.[5] The farther we wander from the statutory language to pick up bits and scraps of legislative history to aid interpretation, the more likely will our interpretations be capricious and unpredictable. Caution is especially appropriate here, because we are construing a waiver of sovereign immunity and nothing in the legislative reports indicates that Congress--as opposed to Mr. Derfner--endorsed the interpretation urged upon us by Lauritzen. In construing a provision allowing fee awards against the government, we must take care not to enlarge the waiver of immunity beyond what a fair reading of the language of the statute requires. Ruckelshaus v. Sierra Club, --- U.S. ----, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983).[6]
 
 
 23
 Had Congress been responsive to Mr. Derfner and the argument Lauritzen makes here, it could have eschewed amending section 1988 and instead amended section 2412(b) to make fees allowable "in those circumstances where the court may award such fees in analogous suits involving other litigants." Congress did not adopt this language; instead it allowed fees against the government "to the same extent that any other party would be liable ... under the terms of any statute which specifically provides for such an award." Nor did Congress amend section 1988. Lauritzen would have us ignore the terms of both sections 1988 and 2412(b).[7] Even if we assume that Congress amended section 2412(b) in response to the comments of Mr. Derfner, the amendment did not accomplish what Lauritzen maintains was his objective. Instead, the amendment only assured that sovereign immunity would pose no bar to a fee award against the United States where the government is found liable under a substantive provision that would authorize a fee award against a state.
 
 
 24
 The district court also relied upon the policy of EAJA in construing section 2412(b). Focusing on the purpose of legislation is surely a legitimate element of statutory interpretation. Nonetheless, this exercise often proves to be difficult because legislatures rarely act with a single purpose. Where statutes reflect, as they frequently do, both explicit and implicit compromises among competing considerations, our use of policy must be wary and cautious. To do otherwise risks upsetting the balance struck by Congress among competing goals. Nor should courts accept a sly invitation to achieve an end for which Congress could not muster the votes. There may be exceptions to this principle, but this case does not present one.
 
 
 25
 The relevance of these observations is demonstrated by considering section 2412(b) in the context of the other provisions of EAJA. Cf. Chemehuevi Tribe of Indians v. Federal Power Commission, 420 U.S. 395, 403, 95 S.Ct. 1066, 1072, 43 L.Ed.2d 279 (1975) (Sec. 4(e) of Federal Power Act must be interpreted in context of other provisions of the Act). EAJA was designed to encourage individuals and small businesses to contest government actions by authorizing fee awards to a prevailing party. E.g., H.R.Rep. No. 1418, supra, at 12, 1980 U.S.Code Cong. & Ad.News at 4991. Comments in the legislative history that address the purpose of EAJA focus primarily on section 2412(d). Congress acknowledged that this provision would be the "general statutory exception for awards against the United States." See id. at 13, 18, 1980 U.S.Code Cong. & Ad.News at 4992, 4997. Congress also specifically noted that this subsection would apply to "constitutional torts." Id. at 18, 1980 U.S.Code Cong. & Ad.News at 4997. Cf. Foster v. Tourtellotte, 704 F.2d 1109, 1111 & n. 2 (9th Cir.1983) (applying Sec. 2412(d)(1)(A) in case alleging unconstitutional invasion of privacy).
 
 
 26
 Section 2412(d) demonstrates that in enacting EAJA, Congress recognized other concerns in addition to seeking to encourage challenges to government actions. Section 2412(d), for example, does not authorize fees without regard to the merits of the government's position. Indeed, Congress considered and rejected a proposal for automatic fee shifting to a prevailing party, and instead provided that fees would not be recoverable if the government's position was substantially justified. H.R. No. 1418, supra, at 13-14, 1980 U.S.Code Cong. & Ad.News at 4992. Section 2412(d) also limits the extent of the government's liability by restricting those parties eligible to recover fees and the hourly rates that may be used to determine awards. See 28 U.S.C. Sec. 2412(d)(2). Finally, section 2412(d) represents a "limited experiment" because a sunset provision repeals that section on October 1, 1984. H.R. No. 1418, supra, at 13, 1980 U.S.Code Cong. & Ad.News at 4992. Congress contemplated that the cost and impact of the legislation would then be reviewed. Id.
 
 
 27
 This adjustment of conflicting ends persuades us that the district court's interpretation of section 2412(b) cannot be supported by reference to the broad purpose or underlying policy of EAJA. Congress thought that purpose would be realized through section 2412(d), and tailored that provision to avoid discouraging legitimate government action or exposing the government to unbounded liability for attorney's fees.
 
 
 28
 The balance struck by Congress would be upset if section 2412(b) were interpreted to allow fee awards under section 1988 in cases analogous to section 1983 suits. A prevailing plaintiff in a section 1983 action is entitled to a fee award unless special circumstances render such an award unjust. E.g., Sethy v. Alameda County Water District, 602 F.2d 894, 897 (9th Cir.1979), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Nearly every case alleging a constitutional or statutory violation by the federal government could be characterized as analogous to an imaginary section 1983 action.[8] This observation applies to cases even in which it is clear that section 2412(d) is intended to be applicable. For example, a suit seeking reinstatement by a federal employee allegedly discharged because of protected First Amendment activities could be characterized as analogous to a section 1983 suit by a state employee against a state agency or official. If the state employee successfully obtained prospective relief, section 1988 would allow a fee award against the state. See Maher v. Gagne, 448 U.S. 122, 130-33, 100 S.Ct. 2570, 2575-77, 65 L.Ed.2d 653 (1980). According to Lauritzen's reasoning, it follows that the prevailing federal employee could recover fees under section 2412(b) without the restraints of section 2412(d).[9] Congress, however, clearly intended that the standard under section 2412(d) would "cover both prevailing plaintiffs and prevailing defendants in general litigation against the Government." H.R.Rep. No. 1418, supra, at 10, 1980 U.S.Code Cong. & Ad.News at 4989.
 
 
 29
 Reasoning by analogy, moreover, resembles attempting to follow signs that point in opposite directions. Absent a state's consent to suit, the Eleventh Amendment prevents a discharged state employee from bringing a section 1983 action for damages against the state in federal court. See Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Because section 1983 does not authorize actions for damages against a state, section 1988 does not allow fee awards against a state in such cases. Cf. Department of Education, State of Hawaii v. Katherine D., 727 F.2d 809, 819-20 (9th Cir.1983) (fees not available under Sec. 1988 where alternative remedial scheme precludes Sec. 1983 action). Inasmuch as Lauritzen seeks damages, her claims could be said to be analogous to damage claims asserted against a state barred by the Eleventh Amendment, and therefore fees are not allowable under section 1988. Our point is that the analogy Lauritzen employs to justify fees can be countered by one that does not.[10] Rather than meander down a path whose guideposts are contradictory, we hold that where the government has violated a particular substantive statute, and attorney's fees may be awarded against any other party for violation of that statute, the government is also liable for fees. We reverse the award under section 2412(b).[11]
 
 
 30
 B. The Denial of a Fee Award Pursuant to Section 2412(d)(1)(A)
 
 
 31
 Lauritzen also requested an award of fees under section 2412(d)(1)(A). The district court denied this request because it found that the government's position in the litigation was substantially justified. 546 F.Supp. at 1226. It was erroneous to deny a fee award solely on this basis. We have recently held that in determining whether the government's position is substantially justified, the district court must evaluate the "totality of the circumstances prelitigation and during trial." Rawlings v. Heckler, 725 F.2d 1192, 1196 (9th Cir.1984). Accordingly, we reverse the district court's denial of fees under section 2412(d) and remand this case for reconsideration of this issue in light of Rawlings.[12] On remand, the district court shall determine if in the totality of the circumstances, the government's position had a reasonable basis both in law and fact. See Wolverton v. Heckler, 726 F.2d 580, 583 (9th Cir.1984).
 
 
 32
 C. A Fee Award Based on the Government's Bad Faith
 
 
 33
 Lauritzen also sought fees under section 2412(b) based on the "bad faith" exception to the common law rule barring fee awards. The district court denied this request on the grounds that the government's litigation conduct did not demonstrate bad faith. 546 F.Supp. at 1227 n. 9. Because recovery under the bad faith exception may be based on the actions that led to a lawsuit as well as the conduct during litigation, McQuiston v. Marsh, 707 F.2d 1082, 1086 (9th Cir.1983), the district court on remand should reconsider this issue to determine if the Navy's prelitigation conduct justifies a fee award.[13]
 
 
 34
 Lauritzen's petition for attorney's fees and costs on appeal is denied. The government's appeal to this court was reasonable. The judgment is reversed and remanded for further proceedings consistent with our decision.
 
 
 35
 REVERSED and REMANDED.
 
 
 36
 BOOCHEVER, Circuit Judge, concurring in part and dissenting in part.
 
 
 37
 I concur in parts II-B and II-C of the majority opinion and in the majority's remand to the district court for reconsideration of whether Lauritzen might be eligible for attorney's fees under section 2412(d). I dissent, however, from the majority's analysis of section 2412(b), and from its conclusion that Lauritzen is ineligible for attorney's fees under that section. In my view, the majority undervalues the importance of the Equal Access to Justice Act's legislative history in interpreting section 2412(b).
 
 I. Analysis of Section 2412(b)
 
 38
 The district court correctly pointed to the testimony of Armand Derfner as the key to understanding the House subcommittee's amendment of section 2412(b). As the majority notes, the original version of Senate Bill 265 limited the United States' liability under section 2412(b) to the extent that a "private party" would be liable. Award of Attorney's Fees Against the Federal Government: Hearings on S.265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee, 96th Cong., 2d Sess. at 3, 9 (1980) (hereinafter Hearings on S.265). Derfner was the only witness to comment on the term "private party". He expressly brought to the committee's attention the discrepancy between a state's liability for attorney's fees under sections 1983 and 1988,[1] and the federal government's liability in similar circumstances under the proposed wording of section 2412(b):
 
 
 39
 Mr. Kastenmeier, if I could just direct myself to one portion of this bill?
 
 
 40
 There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.
 
 
 41
 In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the Newman v. Peggy [Piggie] Park standard. These bills say that the United States should pay fees--in the amendment to 28 United States Code 2412--in those circumstances where the court may award such fees in suits involving private parties.
 
 
 42
 That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.
 
 
 43
 Hearings on S.265 at 100.
 
 
 44
 Derfner was not quite accurate in stating that a party "sues a State" under section 1983. The eleventh amendment bars such a suit against a state qua state absent the state's consent. Quern v. Jordan, 440 U.S. 332, 339-41, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) (per curiam); Peters v. Lieuallen, 693 F.2d 966, 970 (9th Cir.1982). Instead, section 1983 actions are brought against state officials in their official capacity, see Peters, 693 F.2d at 970, or against local governmental units, see Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). Nevertheless, Derfner was correct that the state itself is liable under section 1988 for the attorney's fees assessed in section 1983 actions against state officials, at least where the plaintiff obtains prospective relief in the underlying section 1983 action. In Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Supreme Court held that such fees did not offend the eleventh amendment, id. at 694-97, 98 S.Ct. at 2575-77, and could be awarded even though the state itself was not a party to the underlying section 1983 action. Id. at 699-700, 98 S.Ct. at 2578. As the Court noted:
 
 
 45
 Although the Eleventh Amendment prevented respondents from suing the State by name, their injunctive suit against prison officials was, for all practical purposes, brought against the State.
 
 
 46
 Id. See also Spain v. Mountanos, 690 F.2d 742, 744 (9th Cir.1982) (state Controller and Treasurer ordered to pay from state treasury attorney's fees assessed in section 1983 action against state officials); Gates v. Collier, 616 F.2d 1268, 1271 (5th Cir.1980) (same).[2]
 
 
 47
 The thrust of Derfner's suggestion, therefore, was that the United States should be liable for attorney's fees if federal officials deprived a party of constitutional rights, just as a state would be liable for such fees under section 1988 if state officials violated section 1983. Without further discussion of the bill's wording, the House subcommittee amended the bill to replace "private party" with the current terms "any other party", essentially a verbatim adoption of Derfner's suggestion.
 
 
 48
 Testimony before a congressional committee sometimes is of dispositive weight in interpreting congressional intent where the testifying witness is closely identified with the legislation. See, e.g., United States v. Henning, 344 U.S. 66, 72 n. 14, 73 S.Ct. 114, 118 n. 14, 97 L.Ed. 101 (1952) (citing congressional testimony of the Assistant Administrator for Insurance, Veterans Administration, to interpret statute); United States v. American Trucking Associations, Inc., 310 U.S. 534, 547-48, 60 S.Ct. 1059, 1066, 84 L.Ed. 1345 (1940) (testimony of Chairman of Legislative Committee of the Interstate Commerce Commission); 2A C. Sands, Sutherland Statutory Construction, Sec. 48.11 (4th ed. 1973) (statements of individual witnesses considered where they sponsored or led legislation through Congress). Those cases impliedly held that Congress evidenced agreement with the witness' views by enacting the legislation that the witness sponsored.
 
 
 49
 In the instant case, it is the sequence of events, rather than the witness' sponsorship of the legislation, that provides a nexus between the intent of Congress and that of the witness. Congress, without stating any other reason for the change, amended S.265 in precisely the fashion Derfner suggested. Far from being a bit or scrap of legislative history as the majority implies, Derfner's testimony is the only reason in the legislative record for the amendment. The majority fails to explain the remarkable coincidence in the timing of Derfner's suggestion and the amendment. The only plausible explanation is that Congress adopted the amendment for the reason Derfner suggested. See Premachandra v. Mitts, 727 F.2d 717, 728-29 (8th Cir.1984),rehearing granted, 727 F.2d 717 (8th Cir.1984).
 
 
 50
 If further confirmation of congressional purpose were necessary, it is apparent that the amendment replacing "private party" with "any other party" was aimed at section 1983. The House report on the amended bill expressly states that section 2412(b) "clarifies the liability of the United States under such statutes as the Civil Rights Attorney's Fees Awards Act of 1976 [section 1988] ..." H.R.Rep. No. 96-1418, 96th Cong., 2d Sess. 17, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4996 (hereinafter House Report). Of all the statutes mentioned in section 1988, however, only section 1983 differentiates between states and "private parties", because only section 1983 requires parties to act under color of state law before liability may attach.
 
 
 51
 Federal officials who deprive persons of constitutional rights under color of federal law are not liable for damages under section 1983. See, e.g., Ellis v. Blum, 643 F.2d 68, 83 and n. 17 (2d Cir.1981); Hubbert v. United States Parole Commission, 585 F.2d 857, 858-59 (7th Cir.1978). Relief is available against federal officials in such situations, however, either in a suit arising directly from the constitution against the official in his individual capacity, see Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or in a suit against him in his official capacity, see Beller v. Middendorf, 632 F.2d 788, 796-97 (9th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). The only conceivable purpose for the amendment to S.265 was to place the federal government in the same position regarding attorney's fees in these actions as state governments under section 1983 (through the provisions of section 1988).
 
 
 52
 In order to avoid the logical conclusion that S.265 was amended to impose fees in these actions, however, the majority construes the amendment in an unrealistic manner. The majority concludes the amendment merely removes sovereign immunity as a bar to fees awards "where the government is found liable under a substantive provision that would authorize a fee award against a state." Majority Op. at 9; see also Majority Op. at n. 4. The majority, however, cites no "substantive provision" other than section 1983 that distinguishes between states and individuals. The original version of S.265, therefore, removed the sovereignty bar to fee awards in all cases except those arising under section 1983, because "private parties" could be liable under all of the other statutes named in section 1988. The majority apparently means that Congress adopted the amendment only to remove sovereign immunity as a bar to fees awards against the federal government in the extremely rare case where such fees would be available under section 1983. In other words, in the majority's view Congress intended that attorney's fees could be assessed against the federal government under section 2412(b) if a federal official deprived a party of constitutional rights under color of state law, but not if the official acted under color of federal law.
 
 
 53
 The legislative record does not support this strained construction of congressional intent. Federal officials usually act under color of federal law and seldom act to deprive a party of constitutional rights under color of state law. See Premachandra, 727 F.2d at 729; cf. Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) (imposing liability on federal officials under section 1983 only where state officials played a significant role in the underlying constitutional violation). The majority apparently recognizes that Congress did not intend to focus on these uncommon situations, because the majority adopts its construction even though it assumes that Congress "amended section 2412(b) in response to the comments of Mr. Derfner." Majority Op. at 9. I would not read the amendment so as to frustrate Congress' intent. Cf. Barnes v. Donovan, 720 F.2d 1111, 1114 (9th Cir.1983) (parties may not resort to an unduly literal interpretation of a statute that eviscerates the clear intent of Congress).
 
 
 54
 II. Relationship of Sections 2412(b) and 2412(d)
 
 
 55
 The majority believes that the mandatory fees assessed by section 2412(d) sufficiently meet the purposes of the EAJA, so that it is unnecessary to allow additional discretionary fees under section 2412(b). See Majority Op. at 11-12. The general statutory exception for fees awards, the majority concludes, was intended to be section 2412(d). Majority Op. at 5-6, 10.
 
 
 56
 These two statutory sections, however, have entirely different aims, although both are consistent with the overall congressional intent to reduce the deterrent impact of litigation cost and the disparity of resources in litigation by individuals against the federal government. See House Report at 5-6, 1980 U.S.Code Cong. & Ad.News at 4984. Prior to adoption of the EAJA, 28 U.S.C. Sec. 2412 prohibited awards of attorney's fees against the United States unless a statute specifically authorized such an award.[3] See, e.g., Spencer v. NLRB, 712 F.2d 539, 544 (D.C.Cir.1983). The effect was to limit federal exposure to attorney's fees liability in some situations where states or private individuals risked such an award under the common law or statutes that awarded fees. See House Report at 8, 1980 U.S.Code Cong. & Ad.News at 4987. Section 2412(b) was aimed at removing the federal government's unfair advantage:
 
 
 57
 There appears to be no justification for exempting the United States in these situations; the change simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties. As such, it is consistent with the history of Sec. 2412 which reflects a strong movement by Congress toward placing the Federal Government and civil litigants on a completely equal footing.
 
 
 58
 House Report at 9, 1980 U.S.Code Cong. & Ad.News at 4987. See Premachandra, 727 F.2d at 726-27.
 
 
 59
 Section 1988 was one of the statutory fee awards Congress had in mind when it adopted section 2412(b). The House Report expressly referred to section 1988 twice, both times in close proximity with discussions of section 2412(b). See House Report at 8, 17, 1980 U.S.Code Cong. & Ad.News at 4987, 4996. As with fee awards assessed under section 1988, awards against the federal government under section 2412(b) are at the discretion of the district court.
 
 
 60
 In contrast with section 2412(b)'s relatively noncontroversial elimination of the federal government's unfair advantage, the fees assessed by section 2412(d) are something of an experiment. See House Report at 13, 1980 U.S.Code Cong. & Ad.News at 4991-92. That section assesses mandatory attorney's fees in all cases where the government's position is not "substantially justified," even though a similarly situated private individual, state official or state government would not be liable for fees. Unlike the fees in section 2412(b), the type of liability assessed under 2412(d) is completely novel, and Congress consequently limited section 2412(d) to a three-year trial period. At the end of that time, a "sunset provision" automatically will repeal section 2412(d) to allow Congress to evaluate the law's impact. See Pub.L. 96-481, Sec. 204(c), 94 Stat. 2327 (1980); House Report at 13, 1980 U.S.Code Cong. & Ad.News at 4992.
 
 
 61
 Section 2412(d), however, does not by itself put the federal government and officials on an equal footing with state counterparts, because the mandatory fees under section 2412(d) are assessed only when the government's position is not substantially justified. A state government, therefore, might be liable for discretionary attorney's fees under section 1988 in situations where the federal government would not be liable for mandatory fees under section 2412(d). It was precisely this sort of inequity that section 2412(b) was intended to eliminate. See House Report at 9, 1980 U.S.Code Cong. & Ad.News at 4987. Congress did not intend that section 2412(d) should "replace or supercede any existing fee-shifting statutes such as ... the Civil Rights Act ... in which Congress has indicated a specific intent to encourage vigorous enforcement.... It is intended to apply only to cases ... where fee awards against the government are not already authorized." House Report at 18, 1980 U.S.Code Cong. & Ad.News at 4997.
 
 
 62
 The majority suggests that section 2412(b) might swallow section 2412(d) if Lauritzen's interpretation is adopted. Majority Op. at 12. This fear is unwarranted for at least two reasons. First, section 2412(b) grants only discretionary power to the court to award fees, unlike the mandatory assessment under section 2412(d). Although courts may have limited discretion to deny analogous awards under section 1988, see, e.g., Sethy v. Alameda County Water District, 602 F.2d 894, 897 (9th Cir.1979), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980) (awards are unavailable where special circumstances render the award unjust), attorney's fees nevertheless are not always awarded under section 1988. See, e.g., Greenside v. Ariyoshi, 526 F.Supp. 1194, 1197 (D.Hawaii 1981) ("An award of attorney's fees in a civil rights action must not be such as to encourage the overpressing of marginal claims"). The court's discretion would be no more circumscribed under section 2412(b) than under section 1988.
 
 
 63
 Second, attorney's fees under section 1983, and by analogy under section 2412(b), only are available for constitutional or certain statutory violations by the government. As the majority notes, not every statutory violation gives rise to a cause of action under section 1983, although the circuits are in disagreement as to which statutes implicate section 1983 concerns. Majority Op. at 12 and n. 8. It is extremely unlikely, therefore, that section 2412(b) would have the broad effect the majority expects. See Premachandra, 727 F.2d at 730 (section 2412(d) covers many types of suits that would not fall within the rubric of section 1983); cf. United States v. Miscellaneous Pornographic Magazines, 541 F.Supp. 122, 129 n. 7 (N.D.Ill.1982) (questioning whether attorney's fees could be awarded under section 2412(b) where a defendant merely raised a constitutional defense to a forfeiture action). The majority undoubtedly is correct that fees would be available under sections 1983 and 1988 for discharge of a state employee in derogation of protected first amendment activities. Majority Op. at 12. Such fees also should be awarded in analogous situations involving federal employees under section 2412(b). We need not address, however, the scope of constitutional or statutory violations allowing fees awards. There is no question in this case, involving basic first amendment rights, that the fees provision applies. Whether fees are appropriate in other circumstances should be decided on the concrete facts of future cases.
 
 III. Effect on Law Enforcement
 
 64
 It is unclear why the majority believes that federal law enforcement would be more seriously hampered by attorney's fees under section 2412(b) than state law enforcement currently is restricted by sections 1983 and 1988. The underlying action challenging the government's constitutional violation itself provides the primary disincentive to illegal federal government action. An assessment of attorney's fees merely removes the financial barriers to individual enforcement of constitutional rights.
 
 IV. Limitations on Military Suits
 
 65
 Finally, the majority suggests that because Lauritzen could not bring a Bivens action for monetary damages against her military commanders, her suit is not analogous to a suit under section 1983. See Majority Op. at n. 10. The Supreme Court in Chappell v. Wallace, --- U.S. ----, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), held that military personnel may not sue their superior officers for monetary damages in a Bivens-type action. Id. at 2367. The Court expressly left available, however, access to the courts for military personnel to seek nonmonetary redress of constitutional wrongs. Id. In the instant case, Lauritzen sought injunctive relief as well as damages for the military's denial of her first amendment rights. She obtained a preliminary injunction in the district court, which the court eventually dissolved when the case became moot, but Lauritzen was awarded no damages. Her suit, therefore, does not fall within Chappell 's prohibition against monetary awards, and we need not address the difficult issues such an award might raise. Cf., e.g., Beller v. Middendorf, 632 F.2d 788, 795, 798 (9th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (court has jurisdiction to review discharge by military for homosexual activities).
 
 
 66
 A party may be considered "prevailing" for purposes of attorney's fees under section 1988 if he or she obtains an injunction. See, e.g., White v. City of Richmond, 713 F.2d 458, 460 (9th Cir.1983); Fitzharris v. Wolff, 702 F.2d 836, 838-39 (9th Cir.1983) (temporary restraining order that remained in effect until case became moot and served same function as preliminary injunction); Teitelbaum v. Sorenson, 648 F.2d 1248, 1249 (9th Cir.1981) (per curiam). In fact, if a party succeeds on any significant issue in the litigation which achieves some of the benefit the party sought, and establishes a clear causal relationship between the litigation and the practical outcome, he or she may be considered "prevailing" even without obtaining formal relief. Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983); Rutherford v. Pitchess, 713 F.2d 1416, 1419 (9th Cir.1983); American Constitutional Party v. Munro, 650 F.2d 184, 188 (9th Cir.1981). Lauritzen is a prevailing party under the definition. Her suit resulted in a preliminary injunction, and the trial court found that the final outcome, reversal of the discharge by the BCNR, was prompted by the litigation. That finding is not clearly erroneous and the majority does not so contend. Lauritzen's action is directly analogous to an action under section 1983 and accordingly warrants an award of attorney's fees under section 2412(b).
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 28 U.S.C. Sec. 2412(b) provides:
 Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to [Sec. 2412(a) ], to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 
 
 [2]
 28 U.S.C. Sec. 2412(d)(1)(A) provides:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses in addition to any costs awarded pursuant to [Sec. 2412(a) ], incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 [3]
 42 U.S.C. Sec. 1983 provides in relevant part:
 Every person who, under color of ... any State [law] ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [4]
 Lauritzen argues that Sec. 2412(b) was intended to reverse the results reached in NAACP v. Civiletti, 609 F.2d 514 (D.C.Cir.1979), cert. denied, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980); and Shannon v. HUD, 577 F.2d 854 (3d Cir.), cert. denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978). Even if the House Reports are thought to refer to these decisions, see United States v. Miscellaneous Pornographic Magazines, 541 F.Supp. 122, 128 n. 4 (N.D.Ill.1982), it does not follow that Congress intended to allow fees under Sec. 2412(b) in actions "analogous" to Sec. 1983 suits. In both Civiletti and Shannon, the federal government was accused of violating specific provisions enumerated in Sec. 1988. To the extent EAJA clarifies the government's liability under Sec. 1988, we construe Sec. 2412(b) as reversing Civiletti and Shannon and allowing a fee award against the government if it violates one of the provisions named in Sec. 1988
 
 
 [5]
 Justice Jackson's comments concerning the use of legislative history are apposite:
 When we decide from legislative history, including statements of witnesses at hearings, what Congress probably had in mind, we must put ourselves in the place of a majority of Congressmen and act according to the impression we think this history should have made on them. Never having been a Congressman, I am handicapped in that weird endeavor. That process seems to me not interpretation of a statute but creation of a statute.
 United States v. Public Utilities Comm'n, 345 U.S. 295, 319, 73 S.Ct. 706, 719, 97 L.Ed. 1020 (1953) (Jackson, J., concurring). Cf. J. Hurst, Dealing with Statutes 43 (1982) ("Legislative hearings may produce detailed comments on pending bills, but typically these come from partisans of one interest or another and must be discounted accordingly.").
 
 
 [6]
 Ruckelshaus v. Sierra Club held that a party that achieves no success on the merits cannot recover attorney's fees against the government under Sec. 307(f) of the Clean Air Act. Although the relevant legislative history indicated that Congress did not intend to limit fee awards to "prevailing parties," see 103 S.Ct. at 3278-79; id. at 3286-88 (Stevens, J., dissenting), the Court refused to interpret Sec. 307(f) to allow fee awards to unsuccessful parties absent "a clear showing that this result was intended." 103 S.Ct. at 3277
 We similarly believe that had Congress intended in EAJA to allow fee awards against the government in cases "analogous" to Sec. 1983 actions, it would have said so in plain language. Cf. Premachandra, 727 F.2d at 727 (acknowledging that Congress could have simply amended Sec. 1988 to allow fees against the United States).
 
 
 [7]
 In Premachandra, the Eighth Circuit stated that Sec. 2412(b) makes the United States liable for fees under the same common law standards applicable to any other party. We accept this proposition. See Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir.1983). The Eighth Circuit further observed that Sec. 2412(b) indicates that "similar conduct" warrants similar fee shifting treatment whether fees are sought under a common law exception or a statutory provision. The court concluded that the United States should be liable for fees in suits involving constitutional violations by federal officials because a state would be liable under Sec. 1988 if state officials committed a "similar" violation. 727 F.2d at 726-27
 We cannot accept the logic of this argument. The premise that Sec. 2412(b) imposes the same standards for assessing fees against the United States as against any other party does not support the conclusion reached in Premachandra. Instead it indicates that fees may be assessed "under the terms of any statute," such as Sec. 1988, against the United States to the same extent as any other party. Our conclusion does not imply that the United States may be liable under Sec. 1988 only if some other party in the particular case is also liable for fees. Instead, the crucial factor is whether the United States or its officers acting in their official capacity have violated one of the substantive provisions enumerated in Sec. 1988. They did not in this case.
 
 
 [8]
 42 U.S.C. Sec. 1983 provides a cause of action for violations of a federal statute under color of state law. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). In Premachandra, the Eighth Circuit argued that its interpretation of Sec. 2412(b) would not "swallow up" Sec. 2412(d), because in that circuit Sec. 1983 actions may only be brought for statutory violations that implicate fundamental human rights. 727 F.2d at 730; see First National Bank of Omaha v. Marquette National Bank, 636 F.2d 195, 198 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). No such limitation exists in the Ninth Circuit, although we have recently held that a Sec. 1983 action for statutory violations exists only if Congress intended the statute to create rights for the special benefit of the class to which plaintiffs belong. See White Mountain Apache Tribe v. Williams, --- F.2d ---- at ---- No. 81-5348 (9th Cir. Feb. 7, 1984); Boatowners and Tenants Ass'n v. Port of Seattle, 716 F.2d 669, 672-73 (9th Cir.1983)
 
 
 [9]
 Lauritzen maintains that the Supreme Court's order vacating and remanding East Baton Rouge Parish School Board v. Knights of the K.K.K., 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981), for reconsideration in light of EAJA supports her interpretation of Sec. 2412(b). However, the Court's order and the Fifth Circuit's subsequent opinion do not suggest that the government is liable under Sec. 2412(b) in cases analogous to Sec. 1983 suits. In East Baton Rouge, the KKK brought a Sec. 1983 action against a local school board and HEW. The Fifth Circuit originally denied a request for attorney's fees against the government under Sec. 1988 on the ground that the statute did not possess the "clear or express" language necessary to waive federal sovereign immunity. 643 F.2d 1034, 1037-38 (5th Cir.1981). The court did, however, find that fees could be awarded under Sec. 1988 against the school board. Id. at 1041. After the Supreme Court's remand, the Fifth Circuit did not even acknowledge the possibility that the government could be liable under Sec. 2412(b) because this was a Sec. 1983 action. With respect to Sec. 2412(b), the court observed that "[u]nder this provision, the federal government is now subject to the 'bad faith' and 'common benefit/common fund' exceptions to the traditional 'American Rule' that litigants bear their own costs." 679 F.2d 64, 67 (5th Cir.1982). The court then discussed the requirements for an award under Sec. 2412(d) and concluded that it did not have adequate facts to determine if the KKK met those requirements. Id. at 68. Accordingly, the court remanded the case to the district court to determine if the KKK qualified for an award under either Sec. 2412(b) or (d). Id. at 69
 
 
 [10]
 The district court's decision does not explain how one identifies the appropriate "analogous" suit for determining if fees may be awarded against the government. This problem cannot be convincingly resolved by arguing that fees may be awarded so long as in some "analogous" suit, fees could be awarded against a hypothetical defendant. The case before us illustrates the problematic aspects of the district court's approach
 Lauritzen asserts that because state officials would be liable for fees under Sec. 1988 if they were sued under Sec. 1983, the government should be liable for fees under EAJA in a suit against federal officials under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This argument is flawed both in its application to this case and its general form. Because Lauritzen is a member of the armed forces, she cannot recover damages against her commanding officers under Bivens. See Chappell v. Wallace, --- U.S. ----, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Lauritzen cannot draw an analogy between a Sec. 1983 action and a non-existent Bivens action against her superiors. More generally, EAJA only allows fees against the government in cases involving the government or its officials acting in their official capacity. Because Bivens actions are against governmental employees in their individual capacities, Holloman v. Watt, 708 F.2d 1399, 1402 (9th Cir.1983), EAJA does not authorize fee awards in such suits. Cf. Saxner v. Benson, 727 F.2d 669, 673 (7th Cir. Feb. 13, 1984) (EAJA does not authorize fee awards where defendant officials are sued in individual capacity).
 Lauritzen's most persuasive argument is that her suit is analogous to a Sec. 1983 action seeking prospective relief, and because Sec. 1988 would authorize a fee award against a state, EAJA authorizes an award against the federal government. To sustain this analogy, however, one must ignore the features of this case that determine the government's substantive liability. Lauritzen's membership in the United States military is crucial in identifying the remedies available to her. See Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (United States not liable under FTCA for injury to military personnel related to service).
 Of course, no state or other party is in a position precisely analogous to that of the federal government with regard to the armed services. Cf. Miscellaneous Pornographic Magazines, 541 F.Supp. at 129 n. 7 (noting difficulties of drawing analogies where challenged action is exclusively committed to federal government). But Lauritzen would have us ignore this point, and allow fees so long as we can imagine an aggrieved state employee who would be entitled to a fee award under Sec. 1988. We do not believe that Congress intended Sec. 2412(b) to make fee awards dependent on judges' powers of imagination.
 
 
 [11]
 Our conclusion that the fee award under Sec. 2412(b) was erroneous makes it unnecessary to address the government's argument that the district court improperly awarded fees for the proceedings before the BCNR
 The government's argument that EAJA does not allow fee awards for work done before October 1, 1981 is resolved by our decision in Rawlings v. Heckler, 725 F.2d 1192 (9th Cir.1984). Rawlings holds that EAJA allows recovery of fees incurred before October 1, 1984 in cases pending on that date. 725 F.2d at 1194-95.
 
 
 [12]
 Lauritzen argues that the district court abused its discretion by failing to hold a separate evidentiary hearing to determine if the government's position was substantially justified. EAJA does not generally require district courts to hold separate proceedings to evaluate the merits of the government's position. Although the government bears the burden of showing that its position is substantially justified, EAJA does not require independent evidence--as distinct from the record on the merits--to satisfy the government's burden of proof. If the district court is satisfied that the record on the merits establishes that the government's position had a reasonable basis in law and fact, there is no requirement for a separate hearing on this issue. See Dougherty v. Lehman, 711 F.2d 555, 561-62 (3d Cir.1983)
 
 
 [13]
 Under the "bad faith" exception, the common law allows attorney's fees when one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. See Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir.1983). Section 2412(b) allows awards under this exception, see, e.g., Rose v. United States Postal Service, 725 F.2d 1249, 1257 (9th Cir.1984), but an award of attorney's fees based on bad faith is punitive, and "the penalty can be imposed only in exceptional cases and for dominating reasons of justice." United States v. Standard Oil Co., 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, Federal Practice p 54.77, at 1709-10 (2d ed. 1972))
 
 
 [1]
 42 U.S.C. Sec. 1983 provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...
 Under 42 U.S.C. Sec. 1988:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [2]
 The majority is incorrect if it means to assert as a blanket proposition that attorney's fees may not be awarded in such situations against the state qua state under section 1988. See Majority Op. at 13. Quern v. Jordan, supra, relied on by the majority, expressly reaffirmed the holding in Hutto allowing such fees where a party obtained prospective relief, even though the state could not have been made a party to the underlying section 1983 action against state officials. See Quern, 440 U.S. at 344-45, 99 S.Ct. at 1147. Department of Education, State of Hawaii v. Katherine D., 727 F.2d 809 (9th Cir.1983), also cited by the majority, is similarly inapposite. Attorney's fees were not awarded in that case because there was no underlying section 1983 cause of action. Id. at 820. Lauritzen sought and obtained a preliminary injunction. Her situation, therefore, is analogous to the plaintiffs' in Hutto, Spain and Gates. We need not decide whether she would have been eligible for fees had she sought only damages. Cf. Glosen v. Barnes, 724 F.2d 1418, 1421 (9th Cir.1984) (disallowing such fees)
 
 
 [3]
 The earlier version of 42 U.S.C. Sec. 2412 provided in relevant part:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action.
 * * *
 Pub.L. 89-507, Sec. 1, 80 Stat. 308 (1966) (emphasis added).